**FOREMAN, Plaintiff-Appellee v. REYNOLDS et, Defendants-Appellants.**

Court of Appeals, Second District, Franklin County.

No. 3671.  Decided March 11, 1944.

Baldwin & Nolan, Columbus, for plaintiff-appellee.
Frank J. Cipriano, Columbus, for defendants-appellants.

## OPINION

By BARNES, PJ.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Municipal Court of Columbus, Franklin County, Ohio.

Through plaintiff's petition, he sought to recover judgment against the defendants in the sum of $212.50 allegedly due him as a real estate broker by reason of being instrumental in the sale of certain real estate belonging to defendants and concerning which he had a verbal listing and, following, had shown the property to Arthur Simanec and thereafter defendants sold the property to said Simanec without the knowledge of plaintiff.

The following brief summary of facts will render understandable the nature of the relation between the parties and the real question to be determined. Mrs. Bernice Reynolds, in her own right, held the fee simple title to a four apartment property located at 370-372 Wrexham Avenue. This was a rental premises. Mr. Reynolds had no interest in the property other than a contingent right of dower. The Reynolds lived at 371 Lechner Avenue. The residence property and the four apartment premises were back to back to each other. According to the uncontradicted evidence, the plaintiff Mr. Foreman called at the home of Mrs. Reynolds for the purpose of getting a listing of the four apartment property for sale on a commission basis. From this point on, the evidence is very conflicting.

Plaintiff testified that he went to the home of Mrs. Reynolds to see her about selling her property at Wrexham Avenue. He said he asked her if the property was for sale and she said, yes. He stated that he wanted to know the price and she stated the price that she wanted net, and "I says, I would want a commission out of it so I would have to get more and so I told her I would have to ask $4350.00." Plaintiff said that Mrs. Reynolds replied, "All right". Plaintiff says that he told her at that time that he had prospects that he thought would be interested and Mrs. Reynolds said that it would be all right to show the property. Plaintiff testified that he did not think that he asked defendant on this occasion to sign any card or written listing. In cross-examination he did testify that on some occasion he asked the plaintiff to give him a written listing and that she did not so do. Also, in cross-examination, plaintiff testified that he told Mrs. Reynolds that the commission would be 5%.

Mrs. Reynolds was called as plaintiff's first witness for cross-examination. She testified very positively that she told the plaintiff at once that she could not avail herself of his services for the reason that the property was already sold under a sales contract to Dr. Whitehead. Defendant's testimony was corroborated through her producing the written purchasing and sale contract with Mr. H. Whitehead. This contract was purportedly executed July 17, 1942. It provided for a confirmation of the deal within ten days, or as soon thereafter as possible. It was explained that the contract remained in force by reason of the fact of a delay in completing the abstract to the satisfaction of the attorney for Mr. Whitehead. A servant at the home of Mrs. Reynolds also corroborated the defendant's testimony and says that she overheard parts of the conversation between the plaintiff and defendant and that Mrs. Reynolds told the plaintiff that she could not sell the property because it was already sold.

The plaintiff denies that any such conversation took place. There is also a conflict of testimony as to when this conversation took place. Plaintiff said that he could not definitely state the time but he thought it was sometime early in September. The defendant and the servant in her home both testified that the time was early in August. Admittedly, nothing was signed by Mrs. Reynolds at the time plaintiff called at her home. On the day following, plaintiff brought Mr. Arthur Simanec out to look over the apartment property. Mrs. Reynolds says that she saw them in the backyard, went out and again told Mr. Foreman that she could not permit him to sell the property for the reason that the same was already sold. It is inferable, although not positive, that Mr. Simanec was present during this claimed conversation. He was not called as a witness for either party. It is indicated that his evidence would be very valuable to one or the other. Plaintiff says that on this date they took Mr. Simanec through the apartment and that Mrs. Reynolds accompanied them. She denies going through with them. Plaintiff says that later, he brought out other prospects to look at the premises but on these occasions did not see Mrs. Reynolds. Mrs. Reynolds did not see the prospects and knew nothing about it except as she was told by the tenants. There is no evidence that plaintiff again saw the Reynoldses following this first visit to the premises with Mr. Simanec.

The plaintiff says that sometime in September he prepared a form of contract to purchase the real estate in question by

Mr. Simanec and took the same to this prospective purchaser for his signature. Mr. Simanec declined to sign the contract except with the approval of his counsel. The plaintiff then interviewed the attorney for Mr. Simanec and he likewise refused to approve the contract. This paper writing is undated but we do find the following:

"transaction to be closed within fifteen days of the acceptance hereof.

"This proposition is in effect up to and including September 2, 1942."

The consideration was mentioned as $1350.00 cash and assume a mortgage of $2900.00. This made a total compensation of $4250.00. As far as is disclosed from the evidence there was no further activity on the part of the plaintiff concerning this property until after the same was sold at which time he demanded a commission.

Sometime in September, 1942, the attorney for Mr. Simanec called on Mrs. Reynolds for the purpose of purchasing the property for his client Mr. Arthur Simanec. Mr. and Mrs. Simanec and their attorney, Mr. Robbins, came out to again interview Mrs. Reynolds about the purchase of the property. Following the attorney, Mr. Robbins', first visit on this second occasion when he came out with the clients, Mrs. Reynolds had contacted her attorney and the latter contacted Mr. Whitehead's attorney with the result that the purchase and sale agreement between Mrs. Reynolds and Mr. Whitehead was cancelled. The cancellation is written on the back of the contract, and dated September 16, 1942, signed by H. Whitehead, O. K. Craft, Agent, and Bernice Reynolds and Alfred Reynolds. The deed to Mr. Simanec was executed on or about September 22, 1942. Under this set of facts, the question arises as to whether or not plaintiff is entitled to recover against the defendant. During the course of the trial motion was made to dismiss both defendants. The trial court overruled as to Bernice Reynolds but did order a dismissal of the husband, Alfred Reynolds. This ordered dismissal was not journalized according to the transcript of docket and journal entries. We find the following:

"Judgment rendered for plaintiff for
"$212.50 and costs."

There is no statement as to whom the judgment is against. If we are to supply the names of the defendants, then it is neces-

sary to supply both. There is certainly no question but that the judgment entry is defective and we have had occasion in former trials to call attention to these defects appearing in the transcript of docket and journal entries. It also appears that at the close of the trial and before the entry of final judgment (if the above may be considered a final judgment) counsel for defendant requested that the Court make a separate finding of law and fact. The Court in its intended compliance, made the following statement:

"Statement of finding of facts and conclusions of law.

"The plaintiff brought a prospective purchaser around to view the premises. Later he brought around written contract as broker for defendant to sign—which she refused. But later the defendant sold the house to the prospect which plaintiff procured.

"**Held**—plaintiff having procured the prospect to whom defendant did sell, there is an implied contract to pay plaintiff for the reasonable value of the services by which defendant benefited." ·

From the above, it is evident that the trial court had a misunderstanding concerning the evidence. The plaintiff, Foreman, admitted that he never presented to the defendants any form of contract which he had made out for Mr. Simanec to sign. The evidence was that Mr. Simanec refused to sign it and nothing further was done about it. We are in very serious doubt if, in the statement of facts and conclusions of law, even with the deleted paragraph removed, there is a proper basis for judgment in favor of the plaintiff. With the paragraph inadvertently inserted, because contrary to all the evidence, we have no hesitancy in saying that the legal principle involved would be improperly stated.

The mere fact that a broker brings a prospective purchaser to view a premises and later the owner conveys the property to such prospective purchaser and without the knowledge of the broker, would not create an implied contract to pay the broker a commission.

In such a situation, the broker would be an "intermeddler" and no contractual relation would exist between the owner and the broker. For all it would appear, the broker might be acting for prospective purchaser and expecting his commission from that source. Before a broker can recover a real estate commission, there must be a contractual relation existing, through which the property would be placed in the hands of

the broker for sale. The question of amount of commission would not necessarily have to be agreed upon since, in such a situation, it would necessarily be understood that the owner of the property was obligated to pay for the services of the broker, and the amount, in the absence of any express agreement, would be fixed on a quantum meruit basis. One further difficulty in the instant case is that the petition is very meager in its allegations as to the contractual relation between the plaintiff and defendant. The most that plaintiff says in his petition is that he had a verbal listing from the defendants. Counsel for plaintiff evidently was progressing upon the theory that the words "verbal listing" had a fixed, definite meaning and required nothing further in order to give a full and complete understanding as to what the claimed contractual relation was.

It is a matter of common knowledge that the word "listing" as it is used by real estate brokers refers to some contract with an owner whereby the broker is to sell or lease some particular piece of real estate, but for a petition to simply say that the broker has a verbal listing is too indefinite and cannot be considered as alleging a contract because the terms of the contract are not set out.

A plaintiff in an action might just as well say that he had a contract with a defendant without alleging the terms of the contract. In such a petition, courts would at once say that the pleader is merely setting up a conclusion and that the facts set out would not be sufficient upon which to predicate a cause of action.

The defect in the instant case may be clearly illustrated when we call to mind the different kinds of listings that real estate brokers deal within their operations  The listing may be exclusive or limited; it may be for a fixed period of time or no time stated. It may be unilateral or founded on a consideration. If it is listed for sale, the sale price must be stipulated.

There are many other kinds and forms of listing. We are inclined to think that counsel for plaintiff are laboring under the impression that where a real estate broker takes a person to view a property and thereafter the owner sells to the prospect, that the broker can collect a commission, even though he never had any contractual relation with the owner. Of course, this view would be erroneous.

Considering the record in its entirety, together with the pleadings and the transcript of docket and journal entries, we are constrained to the view that the finding and judgment of

the trial court must be reversed and cause remanded for a new trial.

Costs in our Court will be adjudged against the appellee. Entry may be drawn in accordance with this opinion.

HORNBECK and GEIGER, JJ., concur.