**Century 21 Fixler Realty, Inc.**
v.
**Gateway Plaza**
*[Cite as 4 AOA 318]*

*Case No. 57190*
*Cuyahoga County, (8th)*
*Decided June 21, 1990*

*Blaine S. Schwartz, Esq., Mesch & Epstein Co., L.P.A., 3570 Warrensville Center Road, Shaker Heights, Ohio 44122, for Plaintiff-Appellant.*

*Patrick R. Rocco, Esq., 25000 Euclid Avenue, Suite 200, Euclid, Ohio 44117, for Defendants-Appellees.*

J. F. CORRIGAN, J.

Plaintiff, Century 21 Fixler Realty, Inc. (hereafter referred to as "Fixler") appeals from the order of the trial court which granted summary judgment to defendants in Fixler's quasi-contract action alleging unjust enrichment. For the reasons set forth below, we reverse and remand for further proceedings.

## I.

During development of the Gateway Plaza shopping center (hereafter referred to as "Gateway"), Robert Calevich, a real estate salesman with Fixler, acting with no prior agreement, contacted Thomas Woods, an employee of Gateway's leasing agent, Voinovich & Co., and notified him that the president of Discount Drug Mart was interested in leasing space at Gateway.

Thereafter representatives of Gateway, or its leasing agent contacted the president of Discount Drug Mart directly, and, without the assistance of Calevich, began negotiations for a lease agreement with him. Calevich, the son-in-law of Discount Drug Mart's president, subsequently sent a letter to Woods, informing him that "[a] referral fee, commensurate with any agreement reached between [the leasing agent] and Discount Drug Mart is appropriate."

The record further suggests that after negotiations were completed and Gateway and Discount Drug Mart had entered into a lease agreement, Calevich sent a letter to one of Gateway's general partners, which indicated that he expected a fee for his services.

Gateway and Voinovich & Co. refused Calevich's requests for compensation, however, and this action was subsequently commenced. In its amended complaint, Fixler alleged that Gateway, its general partners, Voinovich & Co., and Woods, have been unjustly enriched by their refusal to compensate Calevich. Each of the defendants denied liability, and affirmatively averred that, *inter alia*, Fixler was not authorized to procure tenants for them, and that at no time did they expect to compensate Fixler.

On November 15, 1988, defendants moved for summary judgment contending that there was no express or implied agreement in effect between the parties, and that they were entitled to judgment pursuant to *Ostendorf-Morris Co.* v. *Slyman* (1982), 6 Ohio App. 3d 46. In opposition, Fixler argued that its amended complaint asserted a quasi-contract theory of recovery to prevent unjust enrichment, and that defendants' brief did not address this theory.

The trial court subsequently granted defendants' motion, and this appeal was commenced.

## II.

In this assignment of error Fixler maintains that the trial court improvidently granted defendants' motion for summary judgment because defendants' motion refuted the existence of a contract implied in fact, and its amended complaint asserted liability through a contract implied in law. We agree.

With respect to procedure, we note that, pursuant to Civ. R. 56(C), summary judgment is properly granted where it is established that:

"* * * (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327.

With respect to the substance of Fixler's claims against defendants, we note that this court was presented with facts similar to those now presented in *Ostendorf-Morris Co.* v. *Slyman, supra*. In that case, a real estate broker introduced the owner of a parcel of property to a potential buyer. A sale was ultimately completed, without any further assistance from the broker.

This court disallowed the broker's claim for recovery on the basis of an implied contract derived from the custom that the seller usually pays brokerage commissions. We stated:

"A real estate broker may recover commissions for the sale of property only by reason of an express or implied contract. *Suter* v. *Farmers Fertilizer Co.* (1919), 100 Ohio St. 403; *Hoke* v. *Marcis* (1955), 71 Ohio Law Abs. 364. * * *

"* * *

"* * * Broker is not entitled to the *quantum meruit* value of its services, in the absence of an express or implied agreement to pay those services. See *Kaufman* v. *Smith, supra*, at 75-76." *Id.* at 47. In addition, we rejected the broker's contention that the requisite agency agreement could be inferred from custom. *Id.* at 48.

While *Ostendorf-Morris Co.* v. *Slyman, supra*, has never been reversed, the Supreme Court has recently explained that *Ostendorf-Morris Co.* v. *Slyman* "dealt solely with the issue of an implied-in-fact contract, concerning a real estate broker who *volunteered* his services without the knowledge or assent of the defendants." See *Legros* v. *Tarr* (1989), 44 Ohio St. 3d 1, 7 (emphasis in original). Concomitantly, the court clarified the distinction between contracts implied in fact, and quasi-contracts implied in law, stating:

"In express contracts the assent to its terms is actually expressed in offer and acceptance. In

contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts." *Id.* at 6-7; accord *Lucas* v. *Costantini* (1983), 13 Ohio App. 3d 367, 368-369.

In light of the foregoing, we hold that defendants' denial of liability pursuant to a contract implied in fact was insufficient to refute Fixler's allegations of liability on a quasi-contract to prevent unjust enrichment.

*Judgment reversed and*
*cause remanded.*

PATTON, C.J., and SWEENEY, J., concur.