This matter presents a timely appeal from a decision rendered by the Jefferson County Common Pleas Court, granting summary judgment in favor of defendants-appellees, Robert P. King, et. al.
On December 5, 1997, plaintiff-appellant, Anthony C. D'Aurora, filed a complaint against appellee alleging three causes of action including, breach of an implied contract; request for an equitable lien against appellee's property and a request for declaratory judgment. Appellant's complaint essentially revolved around a parcel of real property which belonged to appellee, Robert P. King, and which was made available by appellant, as a real estate broker, to interested buyers. In response to appellant's complaint, appellee denied that any written or verbal contractual relationship existed between the parties. Appellee asserted the Statute of Frauds as a defense and further denied that he had any implied in fact or implied in law contract with appellant. Appellee denied having invited, sought, solicited, engaged or otherwise contracted for any of appellant's services. Although the facts are contested, appellant stated that he was a good friend of Nate Cohen, who is now deceased and who was part owner with appellee of the disputed real property. Upon Mr. Cohen's death, his grandson tried to sell the real property, but was unsuccessful. Sometime in May of 1990, appellant received a telephone call from appellee expressing an interest in selling the real property in question. Appellant maintained that for many years, he tried to sell said real property to no avail.
Appellant stated he received a telephone call from a individual known as Ed DiPino, who was a broker for Commonwealth Capital Corporation, the ultimate buyer of the real property in dispute. Mr. DiPino expressed an interest in purchasing real property in general and inquiring as to the availability of parcels in Steubenville, Ohio. In response to Mr. DiPino's inquiry, appellant suggested four different parcels of real property which were available for purchase, including the King property. Appellant then faxed a list and maps of said real property to Mr. DiPino. Upon receiving same, Mr. DiPino and an individual known as Mr. Hubly, who was the director of development with Commonwealth Capital Corporation, reviewed the information. Mr. Hubly became interested in the King property and attempted to contact appellee, to no avail as appellee was out of town on vacation. Allegedly at this point in time, appellant was asked by Mr. DiPino to coordinate a meeting with appellee so they could discuss the purchase of the real property in question. Such fact is contested by appellee who stated that he was contacted by appellant and it was indicated to him that appellant was associating himself with Mr. DiPino, apparently on a voluntary basis, in presenting said real property. No additional conversation was had concerning any proposed contractual relationship or brokerage commission.
A meeting was held on February 4, 1997 in appellee's office whereupon Mr. Hubly, Mr. DiPino, appellee and appellant were present. Appellant essentially maintained that appellee would not have sold the real property in question to Commonwealth Capital Corporation for $218,000.00 if appellant had not made said real property available for purchase. Appellant basically contended that although there was nothing in writing between himself and appellee with reference to the sale of the subject real property, an implied in law contract existed, and that he was entitled to a commission of 10% from the sale of the property. Appellant maintained that the denial of said commission would constitute an unjust enrichment on behalf of appellee.
Pursuant to Civ.R. 56, appellee filed a motion for summary judgment. On July 24, 1998, appellee filed a memorandum in opposition to said motion. Following a hearing, the trial court sustained said motion by journal entry filed on September 2, 1998.
Appellant sets forth two assignments of error on appeal which have a common basis of law and fact. Therefore, appellant's first and second assignments of error will be discussed together and allege respectively as follows:
 "THE TRIAL COURT ERRED IN HOLDING THERE WAS NO DISPUTE AS TO ANY MATERIAL FACT BECAUSE THE ONLY ISSUE RAISED BY DEFENDANTS IN THEIR MOTION FOR SUMMARY JUDGMENT WAS A SINGLE QUESTION OF LAW.
 "EVEN IF A BROKER CAN BE COMPENSATED PURSUANT ONLY TO AN EXPRESS OR IMPLIED IN FACT CONTRACT, THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO DISPUTE AS TO ANY MATERIAL FACT."
In determining whether a trial court has properly granted summary judgment, a court of appeals must conduct a de novo review of the record. Grafton v. Ohio Edison Company (1996),77 Ohio St.3d 102, 105.
Civ.R. 56 (C) recites, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
As set forth by the Ohio Supreme Court in WelcoIndustries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346:
 "Under Civ.R. 56, summary judgment is proper when `(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' * * * Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."
The Ohio Supreme Court in Dresher v. Burt (1996),75 Ohio St.3d 280, held that a moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support its claims.
The Ohio Supreme Court in Dresher, supra further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which such party bears the burden of production at trial.
Although appellant's assignment of errors are convoluted, he essentially argues that the trial court committed error in sustaining appellee's motion for summary judgment in light of the provisions contained within the Statute of Frauds. The Statute of Frauds provides that certain agreements, by statute, must be evidenced by a writing signed by the parties sought to be bound. R.C. 1335.05 provides, in pertinent part:
 "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditament, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
Appellant emphasizes that up until 1931, the Statute of Frauds expressly provided that real estate commissions had to be memorialized by a writing. Appellant cites to Section 8621 of the Legislative Acts in the General Code from 1925, included a provision concerning a contract to pay any commission upon the sale of an interest in real estate. Appellant distinguishes the Legislative Act adopted in 1925 from the Legislative Act adopted in 1931, which omitted said provision.
Appellant asserts that an implied in law contract existed. Appellant cites to Hummel v. Hummel (1938), 133 Ohio St. 520,525, wherein the Ohio Supreme Court stated that quasi-contracts are based on the law creating an obligation upon a person who has received benefits which he is not justly entitled to retain and for which he may be made to respond to another. Appellant further cites to Legros v. Tarr (1989), 44 Ohio St.3d 1, 7
which provided in pertinent part:
 "`* * * In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts. * * *'"
Appellant further claims that Mr. DiPino himself admitted in his deposition that had it not been for the efforts of appellant, the transaction would never have occurred. (DiPino Depo. pg. 32-33).
On the contrary, appellee adamantly maintains that he never sought to engage appellant in the capacity as a broker. InOstendorf-Morris Co. v. Slyman (1982), 6 Ohio App.3d 46, paragraph one of the syllabus, the appellate court held:
 "In order to establish an implied real estate brokerage contract, a broker must present evidence that the seller authorized it to produce a buyer under circumstances in which a reasonable seller would believe that the seller is expected to compensate the broker for those services."
In Ostendorf, supra, at 47, the appellate court further emphasized:
 "A contract is not established by evidence that the broker was the procuring cause of the sale and introduced the buyer to the seller. * * * Nor does a broker's request for information about a seller's price and seller's response to that request create an implied employment contract."
The facts in Ostendorf, supra are similar to the facts in the instant case in that the broker procured the opportunity for sale and introduced the buyer to the seller. In the case at bar, appellant's involvement was limited to merely suggesting several real estate properties available for purchase. Appellant's involvement constituted only a telephone call and an attendance at a meeting. In accordance with Ostendorf, supra, such an activity does not constitute an implied employment contract. In Ostendorf, the appellate court further stated that testimony from sellers of commercial real estate which indicated that they did not know the broker was acting on their behalf and that they never agreed to hire a broker or pay any commission, constituted competent, credible evidence from which to conclude that there was no implied employment contract. Further, inWeinstein v. Newman (1951), 89 Ohio App. 301, the court stated:
 "Where services are performed on request, whether an obligation to pay arises depends upon the intent of the parties. There must be a meeting of the minds on the intent to enter into a contract, on the one hand, to perform the service and, on the other, to pay therefor.
 "The only difference between an express contract and a contract implied in fact is the method of proof. The former is proved by words and the latter by acts, conduct, and circumstances.
 "A promise to pay for services can be implied only where they are rendered under such circumstances as authorized the party performing to entertain a reasonable expectation of payment therefor by the party benefited. The promise to pay must be a fair inference from the benefited party's conduct.
 "The burden of proof rests upon the plaintiff to prove that the services were rendered under such circumstances as to create an obligation to pay therefor, that is, that there was a meeting of the minds on the intent to create a contract."
Appellant's services in the sale of the real property in question were not sought by appellee. Appellee never promised to pay appellant any commission based upon the sale of the subject real property.
In Lateef v. Bitonte (February 22, 1995), Case No. 92 C.A. 6, unreported, this court addressed a similar issue where appellee Bitonte's motion for summary judgment was sustained since the parties' agreement was not memorialized by a writing pursuant to R.C. 1335.05, the Statute of Frauds. Such case dealt with the sale of interest in land between a licensed realtor and a prospective buyer. This court affirmed the trial court's decision and held that no enforceable contract existed between the parties as there was no writing memorializing any agreement.
It is apparent from the record that the trial court was of the opinion that, if in fact there was ever any agreement concerning the property in question, it may have been between appellant and Mr. Cohen who is deceased, and not with appellee. The trial court specifically stated:
 "I also though am of the opinion from what I can read in here most of the dealings Mr. D'Aurora had with this property and his efforts to sell it were through Mr. Cohen. Mr. Cohen wanted to lease it primarily but then there was some talk about sale at a certain price. That went back to approximately 1990 I think about the time he died and I think any contract that may have been in effect died with him.
 "The deposition of Mr. King was at the time this all came to air there was no contract; there was no — property was not actively being marketed for sale; there was no sign for sale; nobody was doing anything. That was in his deposition.
 "Mr. D'Aurora's involvement with this property did not come from the owner. It came as a result of another broker looking for commercial real estate to develop. If he knew that this was available I'm sure with a little bit of effort perhaps Mr. DiPino himself could have found that there was other property available. I'm somewhat surprised that he didn't know this was available on his own * * *.
 "But I don't think you have any contract whether implied in fact or implied in law. No terms and conditions as to a sale price, no terms and conditions as to a commission to be paid. There's a dispute even in the testimony of the affidavits as to what a reasonable commission would be with respect to sale of this property. I think I saw one said six percent, someone else said ten percent.
 "In the absence of any of this I don't think that there is a contract for sale. I don't think there's an implied contract; no quantum merruit (sic)." (Tr. at 34-35).
Based upon the evidence presented, it is apparent that in construing the evidence in a light most favorably to the appellant, there is no genuine issue of material fact and the trial court's granting of summary judgment in favor of appellees was proper.
Appellant's first and second assignments of error are found to be without merit.
The judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ___________________________________ EDWARD A. COX, PRESIDING JUDGE