OPINION
Defendants-appellants, Dale and Colleen Mathew, appeal from the judgment of the Allen County Court of Common Pleas which granted the plaintiff-appellee, Greg Green, broker, dba Green Acre Realty, a commission of $8,250, plus interest and costs.
On November 24, 1997, Green Acre Realty filed this action seeking payment of a real estate commission from the Mathews in connection with the sale of their house to Clarence and Holly Santos. The evidence presented before the magistrate of the trial court indicated that on May 17, 1996, the Mathews entered into a six-month listing agreement through its agent, Mary Pahl, authorizing Green Acre Realty to sell their residence located at 578 Hunters Run in Bluffton, Ohio. That listing agreement expired on November 17, 1996. On December 9, 1996, the Mathews signed a second listing agreement, which was extended by initialed notations on the agreement through February 15, 1997, and included essentially the same terms as the original listing contract, except for the dates of its applicability. This document provided as follows:
 In consideration of your agreement to use your efforts to find a purchaser, the undersigned hereby give you through February 15, 1997 the exclusive right to sell the following described property: 578 Hunters Run for the sum of $172,000.00 terms cash and the undersigned agrees to pay a fee of 5% of the selling price, if the property is sold or exchanged, within 90 days, thereafter by the undersigned to anyone with whom you or your representatives had negotiated during the term of this contract, of whom I have notice either for the price and upon the terms herein named or for any other terms which may be accepted[.]
On October 14, 1996, Pahl presented the Mathews with a written offer from the Santos to purchase the residence for $168,000. Mr. Santos testified that he had first learned about the property from the Green Acre Realty sign in the Mathews' yard, that Pahl had shown them the property, and that they did not have personal contact with the Mathews until May 1997. The Mathews accepted the Santos' offer that same day. However, the offer was contingent upon the sale of the buyers' property, and when their property did not sell, the real estate contract was extended several times by mutual agreement of the Mathews and the Santos, the latest extension being until March 15, 1997. Ultimately, three days later, the Mathews signed a mutual release and the earnest money was returned to the Santos.
On May 2, 1997, upon the sale of the Santos' property, Mr. Santos contacted Mr. Mathew to discuss purchasing the subject property. Mr. Santos was told to contact Pahl with Green Acre Realty. When Pahl then informed Mr. Mathew of the Santos' offer to purchase the property for $168,000, he talked with Pahl about whether she would accept a real estate commission of $5,000 instead of the five percent commission. Pahl testified she would have accepted a reduced commission of $7,000. Mr. Mathew admitted that dissatisfied him and thus the offer was rejected. The Santos remained interested in purchasing the property and during a telephone conversation which occurred shortly thereafter, Mr. Mathew mentioned that he would be interested in selling the property after a certain date. He admitted this was in order to avoid the real estate commission to Green Acre Realty. When the Santos checked back with Mr. Mathew, they entered into a written purchase agreement dated June 16, 1997. Mr. Mathew testified that he was willing to take a reduction in price to $165,000 because of the fact that he was avoiding the real estate commission. On July 1, 1997, the sale with the Santos was consummated.
On December 16, 1998, the trial court entered a judgment entry finding that Green Acre Realty was entitled to a commission based on theories of implied contract in fact between the parties and procuring cause. Thus, the trial court awarded Green Acre Realty a commission of $8,250, plus interest and costs.
The Mathews now appeal from the judgment of the trial court and for their sole assignment of error, they assert that:
 The trial court erred as a matter of law in finding that appellee was entitled to a commission on the final sale price from the sale of appellants' property to Mr. and Mrs. Santos in the amount of $8,250.00.
In their assignment of error, the Mathews argue that Green Acre Realty was not entitled to its commission because it never procured a ready, willing, and able purchaser for their property on the terms of the listing agreement. They further argue that in order for Green Acre Realty to be entitled to a commission there had to have been a written, enforceable contract to sell.
"A real estate broker may recover commissions for the sale of property only by reason of an express or implied contract." Ostendorf-Morris Co. v. Slyman (1982), 6 Ohio App.3d 46, 47. An implied contract exists when "a seller authorizes the broker to produce a buyer under circumstances which should reasonably cause the owner to believe he will be expected to compensate the broker for those services." Id. As the Ohio Supreme Court recognized in Legros v. Tarr (1989), 44 Ohio St.3d 1, 6, a broker is entitled to a commission if he (1) produces a buyer or seller who is ready, willing and able to buy or sell on the principal's terms, and (2) the transaction, or the readiness to perform on the principal's terms, directly results from the broker's efforts, without a break in continuity.
In this case, there is no dispute that Mathews' second listing agreement with Green Acre Realty obligated them to pay a five percent real estate commission upon the sale of their property to the Santos within ninety days of the expiration of the agreement, which we will refer to as the protection period. The property was listed for $172,000; however, the listing agreement did contain the following language: "either for the price and upon the terms herein named or for any other terms which may be accepted[.]" Mr. Mathew admitted that the only reason why he refused to accept the May 2, 1997 offer to purchase by the Santos was to avoid a commission of five percent to Green Acre Realty based on the terms of the protection period. We note that this offer to purchase was for exactly the same price as the original offer and was to be in cash. The evidence demonstrates that there was no substantial break in the negotiations between the same parties. Shortly after the expiration of the protection period, the Mathews entered into a purchase agreement for the subject property. We conclude that the trial court correctly found that a ready, willing and able buyer had been produced in accordance with the Mathews' terms.
Finally, we find no merit in the Mathews' remaining contention that no enforceable contract was entered into between the Mathews and the Santos. The May 2, 1997 offer meant that Green Acre Realty had produced a ready, willing, and able buyer for the subject property during the protection period, but its right to a commission was conditioned upon the sale or exchange of the property. The only way Green Acre Realty was entitled to recover its commission would be under an implied contract when the property was sold. Given the dealings among the parties and the words and conduct of Mr. Mathew, together with the circumstances following the May 2, 1997 offer to purchase, we conclude that the trial court correctly determined that a contract should be implied in fact between the parties and that Green Acre Realty was thus entitled to a five percent commission upon the sale of the property to the Santos.
Accordingly, this assignment of error is overruled and the judgment of the trial court awarding Green Acre Realty a commission of $8,250, plus interest and costs, is affirmed.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur.