[Cite as *State v. Irvin*, 2012-Ohio-2279.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss: | NINTH JUDICIAL DISTRICT |
| | ) | |

| STATE OF OHIO | | C.A. No. 25887 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY D. IRVIN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 10 08 2280 |

DECISION AND JOURNAL ENTRY

Dated: May 23, 2012

MOORE, Judge.

{¶1} Appellant, Anthony Irvin, appeals the judgment of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} Kristin Colvin and Anthony Irvin have two children in common. In 2007, Colvin obtained a civil protection order against Irvin, which prohibited him from coming within 100 yards of Colvin or their children. The civil protection order was effective for five years from the date of issuance. However, on August 4, 2010, the children were visiting with Irvin and his relatives at Irvin's mother's home. On that date, Colvin arrived at the paternal grandmother's home to pick up the children, and an altercation between Irvin and Colvin ensued.

{¶3} As a result of these events, the Summit County Grand Jury indicted Irvin on charges of violating a protection order in violation of R.C. 2919.27, a fifth degree felony,

domestic violence in violation of R.C. 2919.25(A), a fourth degree felony, and domestic violence in violation of R.C. 2919.25(C), a second degree misdemeanor.

{¶4} On March 10, 2011, a bench trial commenced. The trial court found Irvin guilty of the two felony charges and not guilty of the misdemeanor charge. The court sentenced Irvin to 24 months of community control.

{¶5} Irvin timely filed a notice of appeal and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

[IRVIN]'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his sole assignment of error, Irvin argues that his convictions were against the manifest weight of the evidence. We do not agree.

{¶7} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶8} Here, Irvin was convicted of violating a protection order in violation of R.C. 2919.27 and domestic violence in violation of R.C. 2919.25(A). R.C. 2919.27 provides that no person shall recklessly violate the terms of a protection order, and violation of this section constitutes a fifth degree felony where the offender has previously violated this section. R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm

to a family or household member." A "family or household member" includes "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b). Where the offender "previously has pleaded guilty to or been convicted of domestic violence," a violation of R.C. 2919.25(A) is a felony of the fourth degree. R.C. 2919.25(D)(3).

{¶9} At trial, the parties stipulated to the accuracy of the State's exhibits, which included the trial court docket of a 2006 conviction for domestic violence, a copy of the civil protection order that Colvin obtained against Irvin in 2007, and the trial court docket of a 2007 conviction for violating the terms of this protection order. Irvin makes no argument as to the weight of the evidence in regard to the civil protection order or to the two prior convictions, and, accordingly, we will confine our discussion to the evidence of the remaining elements of the above charges.

{¶10} At trial, Colvin, two witnesses, and the responding officer testified on behalf of the State. Colvin testified that she had agreed to allow Irvin's brother to visit with the children from August 1, 2011 until August 4, 2011. On August 4, 2011, Colvin received a telephone call from Irvin's brother requesting that she pick up the children from Irvin's mother's house. She and three of her friends went to the paternal grandmother's house, and, when they arrived, Irvin emerged from the residence followed by the children. As she was packing the children's belongings into the trunk of her friend's car, Irvin began to walk toward the street, but then turned and punched Colvin in her face. Irvin then continued to strike her, and she fell and lost consciousness for a moment. Her friends then attempted to intervene, but Irvin "started reaching like he had a gun and said, 'Don't be dumb,'" at which point two of her friends returned to the vehicle. However, one of her friends was able to successfully intervene. Colvin left the

residence and drove her children and friends to her home, and then left to go to her mother's home to contact the police. As a result of the attack, Colvin was unable to eat for a few days, suffered from a headache, suffered pain in her mouth, and sustained injuries to her elbow.

{¶11} On cross-examination, Colvin acknowledged inconsistencies with her prior statement, where she had reported to police officers that her son emerged from the home prior to Irvin and that Irvin's mother had called her to pick up the children. However, Colvin posited that she might have incorrectly written these statements because she was upset over the incident. Colvin also confirmed that there was a delay between the incident and her report to the police. However, Colvin explained that her landlord had performed a background check on her which revealed her past legal issues with Irvin, and she was concerned about having the police arrive at her residence. Therefore, the delay between the incident and the report was due to her driving the children to her home before driving to her mother's home to telephone the police. In addition, Colvin acknowledged that she had told the police that she would seek medical assistance at the hospital, but she ultimately did not go to the hospital. However, Colvin explained that she wanted to go home to be with her children because they had been gone for several days and had witnessed the altercation between their parents. Colvin further explained that she did not go to the hospital because she was scheduled to work early the next morning; however, her injuries prevented her from attending work as scheduled.

{¶12} Colvin's friends Rashae Greer and Assia Brown testified that they rode with Colvin to pick up the children on the date at issue. Brown testified that she witnessed Irvin and Colvin arguing when Colvin was packing the children's belongings into the trunk, and although she was unable to see Irvin's initial punch to Colvin's face, she was able to see other physical movements of the two that were consistent with Irvin striking Colvin in the face. Greer testified

that, although she did not witness Irvin strike Colvin, she heard Colvin yell that he had struck her. Greer and Brown testified that they then exited the vehicle to intervene, but Irvin continued to attack Colvin. Brown testified that Irvin knocked Colvin to the ground, and while Brown was assisting her to her feet, she heard Irvin say words to the effect of, "Don't be dumb," or "[D]on't be stupid," which she interpreted as implying that Irvin had a gun. Brown was able to assist Colvin into the vehicle, and, Brown and Greer accompanied Colvin to her home and stayed with the children while Colvin went to her mother's home.

{¶13} Officer Jeffrey Kubasek of the City of Akron Police Department testified that he responded to Colvin's call on the date at issue. When he arrived at her mother's house, the officer noticed swelling on the right side of Colvin's face and a scratch on her elbow. The officer told Colvin that she should seek medical treatment, and Colvin responded that she would go to the hospital.

{¶14} As part of the defense, Irvin testified that Colvin assaulted him on the date at issue, but he did not retaliate against her. Instead, he left the residence after providing Colvin with the children's belongings.

{¶15} In his merit brief, Irvin argues that Colvin's testimony was inconsistent with, and contained facts absent from the initial police report, and argues that Colvin lacked credibility. Irvin further argues that Colvin's decision to wait one-and-a-half hours before calling the police and her failure to seek medical treatment after the incident indicate that her testimony is unreliable, and the testimony of Greer and Brown was unreliable due to their friendship with Colvin. However, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple*

*Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).  This is because the trier of fact "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30 quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

{¶16}  After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice in finding Irvin guilty of violating a protection order and domestic violence.  Accordingly, Irvin's sole assignment of error is overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

KRISTEN KOWALSKI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.