[Cite as *State v. Carlisle*, 2014-Ohio-2852.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 27028 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LARAY L. CARLISLE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 09 2503 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

MOORE, Judge.

{¶1} Defendant, Laray L. Carlisle, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In the midday hours of July 24, 2012, Mr. Carlisle was involved in a traffic incident involving a taxi driven by Keywana Williams. Mr. Carlisle twice rear-ended Ms. Williams' taxi as she was stopped at an intersection waiting to turn left from East Mapledale Avenue onto South Main Street in Akron, Ohio. Thereafter, Ms. Williams exited her taxi and became lodged to some extent within Mr. Carlisle's window while he was driving away from the scene. She later fell from his car at or near a parking lot located about fifty yards from where Mr. Carlisle had rear-ended her taxi.

{¶3} As a result of this incident, the Summit County Grand Jury indicted Mr. Carlisle on one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of

kidnapping in violation of R.C. 2905.01(A)(1)/(A)(3). Mr. Carlisle pleaded not guilty, and the case proceeded to jury trial. The jury found Mr. Carlisle guilty of felonious assault and not guilty of kidnapping.

{¶4} The trial court imposed sentence in an entry dated July 8, 2013, and Mr. Carlisle timely filed a notice of appeal. Mr. Carlisle now presents one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

[MR.] CARLISLE'S CONVICTION IS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE, AND MUST BE REVERSED.

{¶5} In his sole assignment of error, Mr. Carlisle argues that his conviction for felonious assault was against the manifest weight of the evidence. We disagree.

{¶6} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶7} In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶8} Here, Mr. Carlisle was convicted of felonious assault, in violation of R.C. 2903.11(A)(2), which provides: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." "A person

acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The parties do not dispute that "[a]n automobile may be used as a deadly weapon for purposes of this statute." *State v. Gibson*, 9th Dist. Summit No. 23881, 2008-Ohio-410, ¶ 14, citing *State v. Davidson*, 9th Dist. Lorain No. 89CA004641, 1990 WL 83966, *2 (June 20, 1990). *See also* 2903.11(D)(2) (acknowledging that a motor vehicle could be a deadly weapon used in the commission of a violation of that section).

{¶9} Here, as part of the State's case-in-chief, the prosecution presented the testimony of Ms. Williams, Thomas Baum, and Sergeant Timothy McLeod. Ms. Williams testified that she works for a taxi company. On July 24, 2012, while driving her taxi, she was stopped on East Mapledale Avenue at the intersection of South Main Street, where she planned to turn left. Ms. Williams had on her left turn signal as she waited for traffic to pass. While waiting, she felt a bump against her taxi, and she heard someone say, "[M]ove." She got out of the taxi, and a man, later identified as Mr. Carlisle, was backing up his car, and he was laughing. She called 9-1-1 and explained that a man had just hit her taxi, and she got back into her taxi. After making the 9-1-1 call, she called her employer, and then she again felt Mr. Carlisle hit her taxi with his car. She exited her taxi, and Mr. Carlisle apologized and said he did not mean to hit her that time, and he was in a hurry. Ms. Williams got back in the taxi, and Mr. Carlisle maneuvered his car between her taxi and the stop sign. Their windows were down, and Mr. Carlisle informed Ms. Williams that he could not wait. He held up his license and insurance for her inspection and Ms.

Williams got out of her taxi to take a picture of his license with her cell phone because she did not have a pen. As she approached his window, she testified that he grabbed her hand and phone. Ms. Williams reached into Mr. Carlisle's car to get her phone, and as she was leaned into his car, he began to accelerate. Ms. Williams then ran alongside the car while her upper body was still in Mr. Carlisle's window, but ultimately she just tried to hold onto the car to avoid injury. During the incident, Mr. Carlisle continuously referred to her using an expletive, and, at one point while she was attached to the vehicle, he said he was going to break her arm off. After traveling into a parking lot, the car stopped, and Ms. Williams flew off of the car and hit her head. Mr. Carlisle threw her phone down, breaking it, and quickly drove back toward East Mapledale Avenue. She testified that she saw him stop at her taxi, close the door which she had left open, and drive away. As a result of the incident, Ms. Williams suffered injuries to her head and ankle, and she suffered a flare-up of a previous back injury.

{¶10} On cross-examination, Ms. Williams maintained that Mr. Carlisle took her phone with his right hand and then stretched his right arm out so that she could not reach it. When he started to pull off, she was still reaching for her phone, and she did not expect him to start moving his car. When he did, she held on to the steering wheel, grabbed his shirt, and ended up grabbing ahold of the door when they were moving. The record reflects that defense counsel asked her to demonstrate the respective hand positions of herself and Mr. Carlisle, and she complied. It is difficult to discern from the transcript much of what this demonstration consisted. However, during Ms. Williams' testimony and the limited narration of portions of the demonstration with defense counsel, Ms. Williams' maintained that Mr. Carlisle held her phone away from her by stretching out his right arm, that Mr. Carlisle had grabbed or held onto Ms. Williams' hand, and that Mr. Carlisle had ahold of the steering wheel.

{¶11} Thomas Baum testified that he works at Accent Custom Marble on South Main Street. On the date at issue, he went out the front door of the business and saw a car quickly pulling out of the drive from Accent's parking lot. A woman was screaming in the parking lot. As he went to go help the woman, she asked him to watch her taxi on East Mapledale Avenue, and he complied. When he approached to watch the taxi, the door was open. He stood by the taxi until he flagged down an officer, who stayed with the car while Mr. Baum went back to work. On cross-examination, Mr. Baum acknowledged that no one touched or came near the car while he was watching it.

{¶12} Sergeant Timothy McLeod of the Akron police department testified that he was assigned to investigate this incident. After Mr. Carlisle was arrested, Sergeant McLeod spoke with him. An exhibit containing the video recorded interview was admitted into evidence. On the video, Mr. Carlisle denies any knowledge of the incident. However, an audio recording of a telephone call made by Mr. Carlisle from the Summit County jail also was entered into evidence. During this call, Mr. Carlisle acknowledged the incident, but maintained that Ms. Williams put herself in danger because she jumped into his window after he started moving, and, when he realized she had done so, he stopped.

{¶13} On appeal, Mr. Carlisle argues that Ms. Williams' testimony that she was partially inside the vehicle when Mr. Carlisle began moving was not credible, and, therefore, the determination that he knowingly caused or attempted to cause physical harm to her with his car is against the manifest weight of the evidence. *See* R.C. 2903.11(A)(2). Specifically, Mr. Carlisle maintains that Ms. Williams' account of the relative hand placement of herself and Mr. Carlisle inside of his car while he drove was "impossible" and internally inconsistent. In addition, Mr. Carlisle maintains that it was not possible that Ms. Williams could have seen Mr.

Carlisle shut her taxi door after the incident because her line of sight would have been blocked by a building. Moreover, her testimony on this point was inconsistent with the testimony of Mr. Baum, who maintained that the taxi door was open while he waited with the taxi, and no one touched the taxi at this time. Mr. Carlisle maintains that Ms. Williams' testimony on this point constituted a "glaring impossibility, one that calls the veracity of all of the rest of [Ms.] Williams' testimony into question."

{¶14} However, after reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the jury's resolution of the testimony was unreasonable. Although Ms. Williams' testimony as to the positioning of her hands and body within Mr. Carlisle's car is difficult to envision, we cannot say that her account of the events is "impossible." Further, as to the purported internal inconsistencies in Ms. Williams' testimony and the apparent inconsistency between Ms. Williams' and Mr. Baum's testimony, we have repeatedly held that "[t]he jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). Based upon her testimony, Ms. Williams clearly indicated that she was leaning in the car when Mr. Williams began to accelerate, and that, based upon his threatening words and his actions, he was aware that she was leaning in the car at that time. Moreover, in regard to Ms. Williams' testimony as to Mr. Carlisle closing her taxi door, we recognize that this testimony is inconsistent with the testimony of Mr. Baum. However, we cannot say that it is

impossible that she could have seen Mr. Carlisle close the door as, although pictures of the area where the incident occurred were admitted into evidence, the precise position where Ms. Williams became dislodged from the car is not clear from the record. Further, even if the jury chose to believe that Ms. Williams' testimony on this point was inaccurate, the action of closing the taxi door did not speak to any element of the offense. We do not agree that this inconsistency between her testimony and that of Mr. Baum as to the taxi door undermines the remainder of Ms. Williams' testimony.

{¶15} Consequently, this is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Carlisle guilty. Accordingly, Mr. Carlisle's sole assignment of error is overruled.

III.

{¶16} Mr. Carlisle's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.