DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Micah Schlauch, appeals his conviction for possession of marijuana. We affirm.
 {¶ 2} On September 2, 2004, Detective Mark Kollar received a telephone report of suspected marijuana use at the Liberty Plaza Apartments in the City of Medina. Detective Kollar and Officer Ed Kinney responded to the unit in question, but met with no response to their knock on the front door. Detective Kollar approached the rear of the unit, where he found Defendant seated with two other individuals on the back porch. Detective Kollar asked Defendant if he might *Page 2 
step inside the unit with Defendant to speak with him privately, and Defendant agreed. Detective Kollar ultimately seized a humidor containing marijuana.
 {¶ 3} Defendant pled no contest to one count of possession of marijuana, a violation of Medina City Ordinance 513.03(A).[1] On September 18, 2006, Defendant was found guilty by the Medina Municipal Court and was sentenced to thirty days in jail and ordered to pay a $100 fine. He now appeals the trial court's order denying his motion to suppress the evidence collected during a search of his residence.
 ASSIGNMENT OF ERROR
"The trial court erred in denying [Defendant's] motion to suppress."
 {¶ 4} Defendant argues that the trial court erred in denying his motion to suppress because the trial court's conclusion that Defendant granted Detective Kollar consent to search his residence is not supported by competent, credible evidence. Instead, Defendant maintains that the consent he gave to Detective Kollar's entrance was limited in scope to the downstairs kitchen area. We disagree. *Page 3 
 {¶ 5} The warrantless entry and search of a residence is presumptively unreasonable under the Fourth Amendment. Payton v. New York (1980),445 U.S. 573, 586. One established exception to the warrant requirement is a search conducted pursuant to consent. Schneckloth v. Bustamonte (1973),412 U.S. 218, 219. In order to rely upon a purported consent to search, the State must demonstrate by clear and positive evidence that consent was freely and voluntarily given. State v. Posey (1988),40 Ohio St.3d 420, 427, certiorari denied (1989), 492 U.S. 907. Once given, however, consent to search may be limited or withdrawn by the subject of the search:
 "Whether a search is authorized by warrant or by consent, the scope of the search is limited by the terms of its authorization. Where a suspect places express limitations on the scope of a consensual search, those limitations must be observed. For example, where a suspect tells the police, `The search is over. I am calling off the search,' his consent has been revoked. A suspect may also communicate the limitation of a search by his actions. Where a suspect voluntarily opens his door to the police but then closes the door, barring the officers' progress into his apartment, he has communicated the withdrawal of his consent to the initial intrusion." (Internal citations omitted.) State v. Damron, 5th Dist. No. 06CA-150, 2007-Ohio-5808, at ¶ 22.
See, also, State v. Rojas (1993), 92 Ohio App.3d 336, 339.
 {¶ 6} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v.Hopfer (1996), 112 Ohio App.3d 521, 548, quoting *Page 4 State v. Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. Our application of the law to those facts, however, is de novo. Id.
 {¶ 7} In this case, the trial court's determination that Defendant consented to Detective Kollar's search of his residence is supported by competent, credible evidence. Detective Kollar testified that he arrived at Defendant's apartment on September 2, 2004, in response to a complaint from the manager of the development. He stated he knocked on the door of Unit 81 upon arrival on the scene, but walked to the rear of the apartment when no one answered. According to Detective Kollar, he found Defendant and two other individuals seated on the back porch and asked Defendant if he could step inside the apartment with him to speak privately. Detective Kollar testified that Defendant "said okay," and Detective Kollar summarized the course of events that followed:
 "Q: What happened once you got inside the residence?
 "A: He walked through the kitchen, which is where the sliding glass door is, and into the living area, the living room of the apartment, and I followed him there.
 "Upon in the living room [sic] he grabbed what appeared to be a wooden humidor off the coffee table and he had to walk up the stairs with that. While doing so he asked what it was that I wanted to speak to him about.
 "Q: And what did you say at that point? *Page 5 
 "A: I said I wanted to speak to him about the marijuana that was in the box that he was holding."
Detective Kollar stated that he informed Defendant about the complaint and repeated the question, to which Defendant replied, "approximately one ounce."
 {¶ 8} Defendant disputed Detective Kollar's testimony at this point. Specifically, Defendant testified that Detective Kollar identified himself as a police officer and asked to speak with him in the apartment privately. Defendant stated that he agreed, "after [Detective Kollar] had asked [him] repeatedly." According to Defendant, Detective Kollar followed him upstairs in response to a knock on the front door, picked up the humidor, and opened it as they crossed through the living room. Defendant maintained that Detective Kollar did not ask him about the contents of the humidor until after he had already opened it to reveal its contents.
 {¶ 9} Brandon Pappas, one of the individuals who was with Defendant outdoors when Detective Kollar arrived, also disputed aspects of Detective Kollar's testimony. He confirmed that Defendant consented to allow Detective Kollar in the apartment, but testified that it was "just inside the doorway." Mr. Pappas also stated that he heard Defendant limit Detective Kollar's movement to the area of the doorway. Mr. Pappas also confirmed, however, that he did not see anything that happened in the apartment after Defendant and Detective Kollar left the immediate area of the kitchen. *Page 6 
 {¶ 10} Officer Kinney, who conducted the search of the residence with Detective Kollar, confirmed that Defendant consented to the search. According to Officer Kinney, Detective Kollar had already seized the humidor containing the marijuana when the search began. Officer Kinney recalled that Defendant questioned the search at one point and testified that he ended the search at that time.
 {¶ 11} Defendant argues that this court should accept his version of events rather than that of the officers on the scene. In this case, however, the trial court's determination that Defendant consented to the search of his apartment and did not later revoke or limit the scope of the search is supported by competent, credible evidence, and we accept the trial court's assessment of credibility of the witnesses and its resolution of conflicting evidence.
 {¶ 12} The evidence before the trial court indicated that Defendant consented to Detective Kollar's presence in his apartment and that he did not, by word or action, revoke or limit the scope of that consent. Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 7 
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J. MOORE, J. CONCUR
[1] The record indicates that, while Defendant pled no contest to the charge, the trial court initially indicated on its judgment entry that Defendant had entered a guilty plea. Defendant appealed to this court from that judgment, and we affirmed based on the limited grounds for appeal available to a defendant who has pled guilty. State v.Schlauch, 9th Dist. No. 05CA0077-M, 2006-Ohio-3293, at ¶ 6-7. On September 18, 2006, the trial court vacated its prior judgment and issued a corrected judgment indicating that Defendant had pled no contest to the charge. *Page 1