[Cite as *State v. Shannon*, 2015-Ohio-438.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.     13CA010517 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER R. SHANNON | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     12CR086453 |

DECISION AND JOURNAL ENTRY

Dated: February 6, 2015

---

MOORE, Judge.

{¶1}   Defendant-Appellant, Christopher Shannon, appeals from his conviction in the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   During the early evening hours of December 7, 2012, members of the Elyria Police Department learned that an armed robbery had occurred at the Smoker's Outlet on Cleveland Street.  Within the hour, their investigation led them to a residence at 812 Allen Street.  When officers knocked on the door at 812 Allen, Mr. Shannon answered.  During his encounter with the officers, Mr. Shannon repeatedly asked what he had done and if he was going to jail.  There was also testimony that Mr. Shannon appeared to be very nervous and bore a resemblance to the gunman from the surveillance video of the armed robbery.

{¶3}   After the owner of 812 Allen invited the officers inside, Detective Michael Groomes continued to speak with Mr. Shannon.  Detective Groomes ultimately asked Mr.

Shannon whether he had a gun on his person, and Mr. Shannon replied that he did not. He then began asking to go upstairs and stated that he wanted to use the bathroom. Concerned for his safety, Detective Groomes asked Mr. Shannon to submit to a pat down first, and Mr. Shannon complied. As Detective Groomes patted down Mr. Shannon's left ankle, he felt the grip of a pistol and yelled out to his fellow officers that Mr. Shannon had a gun. Mr. Shannon then pulled away and tried to walk up the stairs in front of him. To stop Mr. Shannon, Detective Groomes leapt up and tackled him. His fellow officers then came to his aid and arrested Mr. Shannon. After arresting Mr. Shannon, the police examined his weapon and found it to be loaded.

{¶4} A grand jury indicted Mr. Shannon on two counts of having weapons under disability, one count of carrying concealed weapons, and one count of obstructing official business. The obstruction count also included a firearm specification. Mr. Shannon ultimately pleaded no contest to all but the obstruction count and its attendant specification. He waived his right to a jury trial, and a bench trial ensued. At the conclusion of the trial, the court found Mr. Shannon guilty of obstructing official business and the firearm specification. The court sentenced Mr. Shannon to a total of one year and nine months in prison.

{¶5} Mr. Shannon now appeals from his conviction for obstructing official business and raises two assignments of error for our view.

II.

**ASSIGNMENT OF ERROR I**

THE GUILTY VERDICT FOR OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. SHANNON'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶6} In his first assignment of error, Mr. Shannon argues that his conviction for obstructing official business is based on insufficient evidence. Specifically, he argues that the State failed to prove that he acted without privilege, or that he actually hampered or impeded the police in the performance of their official duties. We do not agree that Mr. Shannon's conviction is based on insufficient evidence.

{¶7} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶8} R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Whoever commits the foregoing offense is guilty of obstructing official business. R.C. 2921.31(B). Obstructing

official business is a fifth-degree felony if the obstruction "creates a risk of physical harm to any person." *Id.*

{¶9} As a means of providing context, we include in our factual recitation the facts regarding the investigation that led the police to Mr. Shannon. There is no dispute that Mr. Shannon was never charged in connection with the armed robbery that the officers were investigating.

{¶10} Detective Eric Grove testified that he was at the Elyria police station at approximately 6:00 p.m. when a sergeant asked him to help investigate an armed robbery that had occurred earlier that afternoon. He learned that three individuals were involved in the robbery and that one of them had a gun. Shortly thereafter, he received word that the road units believed they had located the vehicle used in the robbery.

{¶11} Detective Grove drove to Westway Gardens to conduct surveillance on 808 Allen Street, the location where the vehicle was parked. He indicated that Westway Gardens is a high crime area known for drug offenses and violent crimes. He described the residences there as side-by-side townhouses with two floors. He testified that he and another officer conducted surveillance at 808 Allen Street for about an hour. During the hour, they observed both male and female subjects walking back and forth from 808 Allen to 812 Allen. After the hour, they decided to first make contact with the individuals at 808 Allen. As he and the other officers were walking to 808 Allen, Detective Grove observed a male peer out the window of 812 Allen before pulling the curtains closed again. He identified Mr. Shannon as the man he saw at the window.

{¶12} After speaking with the individuals at 808 Allen, the officers decided to go to 812 Allen. Detective Grove testified that Mr. Shannon answered the door at 812 Allen and "immediately was very heightened in his verbal communications to us [and] * * * appeared very

nervous." Mr. Shannon also kept asking what he had done and whether he would be going to jail. After the officers entered the residence, Detective Grove spoke to the owner while his colleague, Detective Groomes, continued to speak to Mr. Shannon.

{¶13} Detective Groomes testified that Mr. Shannon answered the door at 812 Allen and that, when he did so, Detective Groomes immediately recognized that he resembled the gunman from the robbery. According to Detective Groomes, when Mr. Shannon saw that the police were at the door, his "eyes got big, his voice was loud, and he began asking, 'What did I do?'" Mr. Shannon repeatedly asked what he had done and whether he would be going to jail. Although Detective Groomes asked Mr. Shannon to step outside, Mr. Shannon did not. Instead, he continued to stand in the doorway and ask what he had done. Detective Groomes testified that he and his fellow officers remained outside until the homeowner of 812 Allen "yelled out to let us in and just to speak with us."

{¶14} Once inside, Detective Groomes continued to speak with Mr. Shannon. He and Mr. Shannon remained standing in the entryway between the front door and a flight of stairs that led up to the second floor. Detective Groomes testified that, because he was investigating an armed robbery and believed Mr. Shannon resembled the gunman, he immediately became concerned that Mr. Shannon might have a weapon. As he explained to Mr. Shannon that they were investigating a robbery, Mr. Shannon continued to ask what he had done. Observing that Mr. Shannon's hands were trembling, Detective Groomes asked him whether he had a gun on his person. Mr. Shannon stated that he did not and indicated that he did not "mess with guns." Detective Groomes then asked Mr. Shannon about the vehicle parked outside. At that point, Mr. Shannon asked to go upstairs for a minute.

{¶15} Detective Groomes told Mr. Shannon that, due to safety concerns, he did not want anyone going upstairs while they were investigating. He asked Mr. Shannon more questions, but testified that Mr. Shannon "remained nervous" and continued to ask what he had done rather than answer the questions being posed to him. Detective Groomes asked Mr. Shannon for a second time whether he had a gun, but Mr. Shannon did not admit that he did. Mr. Shannon then asked if he could go upstairs to use the bathroom.

{¶16} Detective Groomes testified that he did not want to prevent Mr. Shannon from using the bathroom, so he asked him to submit to a pat down before going upstairs. Mr. Shannon agreed and turned around so that he was facing the stairs. After Detective Groomes checked Mr. Shannon's arms and torso, he began patting down his legs. As Detective Groomes squatted down and patted Mr. Shannon's left ankle, he felt a pistol grip and yelled out that Mr. Shannon had a gun. Detective Groomes testified that he would have grabbed hold of the gun, but that he could not because Mr. Shannon immediately pulled away and began walking up the steps. As Mr. Shannon pulled away from him, Detective Groomes leapt up, lunged at Mr. Shannon, and tackled him on the steps. The gun fell out onto the landing area, and Detective Groomes used his body weight to prevent Mr. Shannon from moving any further. Once they secured Mr. Shannon, the officers cleared the gun and found it to be loaded. Detective Groomes estimated that Mr. Shannon made it one to two steps up the stairs before he tackled him.

{¶17} On appeal, Mr. Shannon first argues that his obstruction conviction is based on insufficient evidence because he did not act "without privilege" when he walked away from Detective Groomes. *See* R.C. 2921.31(A). He argues that, while he initially consented to Detective Groomes' pat down, he was within his Fourth Amendment right to revoke his consent and terminate their encounter. Because his attempt to terminate his encounter with Detective

Groomes was privileged, he argues, his act of walking away did not amount to obstruction. *See, e.g., Akron v. Callaway*, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶ 18-20 (9th Dist.).

{¶18} A person who initially consents to a search may revoke his or her consent through words or actions that effectively communicate the revocation of that consent. *See, e.g., State v. Schlauch*, 9th Dist. Medina No. 06CA0092-M, 2007-Ohio-7053, ¶ 5. At the point in time that Mr. Shannon stepped away from Detective Groomes, however, the detective had already felt the gun on Mr. Shannon's ankle. Because Mr. Shannon denied having a gun on his person, the concealed gun gave Detective Groomes cause to seize the weapon. *See Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). At that point in time, it was too late for Mr. Shannon to withdraw his consent. Accordingly, we reject his privilege argument.

{¶19} Next, Mr. Shannon argues that his obstruction conviction is based on insufficient evidence because he never actually impeded or hampered the police in the performance of their lawful duties. He argues that he was largely cooperative throughout his encounter with the police and never acted in a disrespectful manner, fought with Detective Groomes, or attempted to reach for the gun on his leg. He notes that their encounter was very brief and argues that his minimal act of attempting to walk up the stairs was insufficient to prove obstruction.

{¶20} Detective Groomes specifically asked Mr. Shannon whether he had a gun on his person, and Mr. Shannon said he did not because he did not "mess with guns." Both detectives testified that Mr. Shannon appeared nervous throughout their encounter and kept asking what he had done rather than answering their questions. There was also testimony that Mr. Shannon wanted to get away from Detective Groomes, as he first expressed a desire to go upstairs for a minute and then asked to go upstairs to use the bathroom. Knowing full well that he had a gun on his ankle and that Detective Groomes meant to check for weapons, Mr. Shannon allowed

Detective Groomes to begin patting him down. He did not relent and finally admit that he was carrying a gun. Instead, when Detective Groomes crouched down, discovered the gun, and yelled out, Mr. Shannon pulled away and tried to walk up the stairs. His doing so prevented Detective Groomes from grabbing the gun, which he testified would have been his practice. His doing so also caused Detective Groomes, who was in a vulnerable position at that point in time, to leap up, lunge forward, and tackle him on the steps. When he yelled out about the gun and had to tackle Mr. Shannon, Detective Groomes testified that he also became concerned that "if [the other officers] had drawn their weapons and deemed it necessary to use [them], I was right on top of him and possibly in danger of * * * friendly fire being shot by a responding officer." Mr. Shannon's actions necessitated his restraint and arrest. Further, the officers had to clear the weapon he had been carrying and generate a report to document the incident.

{¶21} Viewing the evidence in a light most favorable to the State, we must conclude that there was sufficient evidence from which a rational trier of fact could have found that the State proved beyond a reasonable doubt that Mr. Shannon violated R.C. 2921.31(A). Mr. Shannon lied about having a gun on his person and then pulled away when Detective Groomes discovered it, such that Detective Groomes could not grab the weapon. At that point, Mr. Shannon was aware that Detective Groomes meant to pat him down in order to identify any weapons or other dangerous implements. His decision to pull away and to try walking up the stairs caused Detective Groomes to have to tackle him on the stairs and await aid from his fellow officers. Accordingly, a rational trier of fact could have concluded that Mr. Shannon's purpose was to prevent, obstruct, or delay the police's performance of an authorized act and that Mr. Shannon's actions hampered or impeded the police in the performance of their lawful duties. *See* R.C.

2921.31(A). *See also State v. Greene*, 9th Dist. Lorain No. 08CA009465, 2009-Ohio-2518, ¶ 15; *State v. Frontz*, 9th Dist. Wayne No. 2371, 1988 WL 95865, *3 (Sept. 14, 1988).

**{¶22}** Moreover, we are not persuaded by Mr. Shannon's contention that the evidence against him was insufficient simply because he did not fight Detective Groomes or because their encounter was brief. Mr. Shannon did not simply refuse to answer a question or produce identification. *Compare State v. McCrone*, 63 Ohio App.3d 831 (9th Dist.1989). He lied about having a weapon and then attempted to get away when the gun was discovered. The fact that Detective Groomes was able to quickly defuse the situation before it could escalate further does not mean that the State failed to prove obstruction. Mr. Shannon's argument that his conviction is based on insufficient evidence lacks merit. His first assignment of error is overruled.

<u>**ASSIGNMENT OF ERROR II**</u>

THE GUILTY VERDICT FOR OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. SHANNON'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

**{¶23}** In his second assignment of error, Mr. Shannon argues that his conviction for obstructing official business is against the manifest weight of the evidence. Because Mr. Shannon has failed to set forth a weight argument, we reject his assignment of error.

**{¶24}** When a defendant asserts that his conviction is against the manifest weight of the evidence:

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶25} While Mr. Shannon has captioned his second assignment of error as a challenge to the weight of the evidence, he has failed to set forth a weight argument in the body of his brief. Instead, he argues that his behavior was "*insufficient* to rise to the level of obstructing official business" and that there was "*no evidence* that his brief attempt to walk up the stairs hampered or impeded the police." (Emphasis added.) Mr. Shannon's arguments are once again targeted at challenging the State's burden of production, not its burden of persuasion. He has not explained how the trier of fact lost its way in convicting him, and we have already determined that Mr. Shannon's conviction is based on sufficient evidence. "Because [Mr. Shannon] has not developed an argument to support his manifest weight challenge, we decline to conduct a manifest weight analysis." *State v. Auerswald*, 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 50. Mr. Shannon's second assignment of error is overruled.

### III.

{¶26} Mr. Shannon's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

KENNETH ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.