[Cite as *State v. Schell*, 2017-Ohio-2641.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28255 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ERIC SCHELL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014 09 2912 |

DECISION AND JOURNAL ENTRY

Dated: May 3, 2017

CALLAHAN, Judge.

{¶1} Appellant, Eric Schell, appeals the judgment of the Summit County Court of Common Pleas that convicted him for violation of a protection order. For the reasons set forth below, this Court affirms.

I.

{¶2} Pursuant to R.C. 2903.214, D.B., the complaining victim, filed a petition for a civil stalking protection order. Following an ex parte hearing, the magistrate granted D.B. and his wife, J.B., an ex parte temporary protection order against Mr. Schell. The Order of Protection was granted on April 10, 2014 and was in effect until April 9, 2017.

{¶3} The full hearing on the protection order was held more than two years later. The delay in the full hearing arose from the parties' joint motions to continue the hearing for discovery and the disposition of this criminal matter.

{¶4}    Mr. Schell was indicted on October 7, 2014 for intimidation and violation of a protection order issued pursuant to R.C. 2903.214.  These charges arose from allegations that he was continually harassing various Village of Lakemore officials and employees. He proceeded to trial and the jury found him guilty of violating the protection order, but failed to convict on the intimidation charge pertaining to other Village of Lakemore employees.

{¶5}    Mr. Schell has timely appealed his conviction and raises five assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN [THE] CONVICTION.  THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶6}    In his first assignment of error, Mr. Schell argues that there is insufficient evidence to uphold his conviction for violating a protection order. Specifically, Mr. Schell argues the State did not prove 1) he was served with the protection order, and 2) he violated the protection order.

{¶7}    "'[This Court] review[s] a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

**{¶8}** A sufficiency challenge to a criminal conviction presents a question of law, which the appellate court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Trifari*, 9th Dist. Medina No. 08CA0043-M, 2009-Ohio-667, ¶ 12. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

**{¶9}** Mr. Schell was found guilty of violating a protection order pursuant to R.C. 2919.27(A)(2), which states "[n]o person shall recklessly violate the terms of * * * [a] protection order issued pursuant to section * * * 2903.214 of the Revised Code." "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶10}** A protection order must be served on the defendant prior to the alleged violation. *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, syllabus. Served means actual delivery of the protection order to the defendant, and not mere knowledge or notice that a protection order was issued. *Id.* at ¶ 19.

**<u>Service</u>**

**{¶11}** Mr. Schell argues for the first time on appeal that there is no evidence of service of the temporary protection order upon him. On appeal, Mr. Schell challenges the authenticity of State's Exhibit 34, the service slip, in support of his position that the State failed to present evidence that he was served the protection order. While Mr. Schell objected to Captain Ray's

testimony authenticating the service slip and to the admission of the service slip, Mr. Schell did not assert a failure to serve argument in his Crim.R. 29 motion for judgment. A review of Mr. Schell's Crim.R. 29 motion reveals that his only argument regarding the protection order charge was that D.B.'s testimony was not credible as to the conduct giving rise to a violation.

{¶12} This Court has repeatedly held that when an appellant sets forth specific grounds in a Crim.R. 29 motion, he forfeits all other arguments on appeal. *State v. Partee*, 9th Dist. Summit No. 23643, 2007-Ohio-5114, ¶ 22, citing *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 8, citing *State v. Swanner*, 4th Dist. Scioto No. 00CA2732, 2001 WL 548719, *6 (May 18, 2001); and *State v. Cayson*, 8th Dist. Cuyahoga No. 72712, 1998 WL 241949, *2 (May 14, 1998), citing *United States v. Dandy*, 998 F.2d 1344, 1356-57 (6th Cir.1993) (stating that "[a]lthough specificity of grounds is not required in a [Crim.R. 29] motion, where a [Crim.R. 29] motion is made on specific grounds, all grounds not specified are waived." (Citation omitted.)). Because Mr. Schell asserted a specific ground for his Crim.R. 29 motion, but did not include an argument regarding service, he has forfeited this argument. Therefore, this Court is precluded from addressing Mr. Schell's argument regarding the failure to serve the protection order.

**Violation of Protection Order**

{¶13} Mr. Schell argues there is insufficient evidence proving beyond a reasonable doubt that he violated the protection order. Specifically, he notes the State's witnesses could not discern what he said and to whom he said it, and there are discrepancies between D.B.'s statements to the police and his trial testimony. These appellate arguments mirror the specific ground argued in the Crim.R. 29 motion.

{¶14} D.B. testified he filed a request for a protection order against Mr. Schell for the protection of himself and his wife, J.B. On April 10, 2014, the magistrate granted an ex parte Order of Protection which ordered Mr. Schell not to "* * *, threaten, follow, stalk, harass, * * * [D.B. or J.B.]." The Order of Protection specified Mr. Schell "shall not initiate or have any contact with [D.B. and J.B.] or their residences, businesses, places of employment, * * *." (Emphasis deleted.) Nor shall Mr. Schell "interfere with the * * * business [or] place of employment" of D.B. or J.B.

{¶15} Additionally, there is a provision requiring Mr. Schell to stay away from D.B. and J.B. and to not be within 500 feet of them, including on roadways, private roads, and thoroughfares. If Mr. Schell were to "accidently come[] in contact with [D.B. or J.B.] in any public or private place, [he] must depart *immediately*." (Emphasis sic.) The Order clarifies that "[i]t shall not be a violation of the 500 ft[.] rule for [Mr. Schell] to be on his own property, travel on the public roads, or get his mail near Lakemore City Hall. It shall be a violation to threaten or harass [D.B. or J.B.] while doing so." (Emphasis deleted.)

{¶16} D.B. works for the Village of Lakemore as a water operator. One of his job duties is road paving. On August 27, 2014, D.B., his supervisor, and a co-worker were making repairs to Lakeside Drive, between Ackers Avenue and Hilda Street. Mr. Schell lives at the corner of Lakeside Drive and Ackers Avenue. His parcels form an L-shape, providing him frontage on Lakeside Drive, Ackers Avenue, and Hilda Street.

{¶17} As D.B. was repairing the road, he observed Mr. Schell standing on his property taking pictures of him. A short time later, Mr. Schell drove out of his driveway onto Ackers Avenue. He turned left onto Lakeside Drive and approached the area where D.B. was working. Mr. Schell drove past the work area and turned left on the next road, Hilda Street. He turned his

truck around in his driveway on Hilda Street and headed back towards Lakeside Drive. Mr. Schell turned right onto Lakeside Drive and again approached the worksite.

{¶18} D.B. testified that as Mr. Schell approached the work area a second time, he swerved his truck toward D.B. and the machine he was operating. As Mr. Schell did this, he yelled something in the direction of the work area. D.B.'s supervisor also heard Mr. Schell "hollering," but did not see Mr. Schell swerve his truck. Neither D.B. nor his supervisor were able to hear what Mr. Schell said. Mr. Schell proceeded to turn right on Ackers Avenue and pulled back into his driveway, returning home.

{¶19} Taking the evidence in the light most favorable to the prosecution, the jury could reasonably conclude beyond a reasonable doubt that Mr. Schell recklessly violated the protection order. The record shows a temporary protection order was issued prohibiting Mr. Schell from being within 500 feet of D.B. and initiating contact with him. While the protection order permitted Mr. Schell to be within 500 feet of D.B. while on his own property or when traveling on a public road, he was not permitted to threaten or harass D.B. Although standing on his own property, Mr. Schell photographing D.B. as he worked is evidence of his heedless disregard of the protection order and any resulting consequences.

{¶20} Moreover, the evidence shows that Mr. Schell knew D.B. was working on the road near his house because he was taking pictures of D.B. as he worked. Thus, Mr. Schell's contact with D.B. as he drove on Lakeside was not accidental, but reckless. While Mr. Schell was permitted to drive on Lakeside and the surrounding streets, the evidence shows that he left his home, drove past the worksite, turned around, and came back to the worksite, at which time he swerved at D.B. and yelled in his direction, and then returned home. Again, Mr. Schell acted with heedless indifference towards the dictates of the protection order when he entered the

roadway to initiate contact with D.B., to harass or threaten D.B., and to interfere with D.B.'s place of employment, all of which are violations of the protection order. The evidence does not support Mr. Schell's contact as being unintentional or accidental. Even presuming Mr. Schell's initial contact was accidental, the protection order mandated he depart immediately. Instead, Mr. Schell circled back around to D.B.'s location and swerved toward him.

{¶21} Mr. Schell argues there is no evidence that he violated the protection order because there was no testimony as to what he said and to whom he said it. Mr. Schell points to D.B.'s testimony that he assumed Mr. Schell was yelling at him even though there were two others persons present at the worksite. The uncertainty as to what Mr. Schell said and to whom it was directed is immaterial because there is evidence that Mr. Schell threatened or harassed D.B. by his conduct, as explained above.

{¶22} Mr. Schell also challenges the sufficiency of the evidence based on the "radically different" recollections of the events by D.B. and his supervisor. Both D.B. and his supervisor heard Mr. Schell yelling as he drove by, but neither know what Mr. Schell said. Their testimony differs as to the number of times Mr. Schell passed the worksite, when Mr. Schell yelled, and whether Mr. Schell swerved the truck.

{¶23} D.B. testified that Mr. Schell drove by the worksite, turned around, and drove past the worksite a second time. According to D.B., the yelling and swerving occurred in the second passing. The supervisor testified he only saw Mr. Schell pass by once, heading towards Hilda Street, before driving off. According to the supervisor, the yelling occurred at that time and he did not see Mr. Schell swerve the truck.

{¶24} Because there was conflicting evidence, it was the function of the jury to weigh the evidence and assess the credibility of the witnesses in arriving at its verdict. Where

reasonable minds can reach different conclusions upon conflicting evidence, a determination as to what occurred is a question for the trier of fact. It is not the function of this Court to substitute its judgment for that of the factfinder. Rather, this Court reviews the evidence in the light most favorable to the prosecution. Despite the conflicting testimony as to the number of times Mr. Schell drove by and when he yelled, there is evidence, as set forth above, that Mr. Schell did drive by D.B. and did yell toward the workers. A rational trier of fact could have found that Mr. Schell recklessly violated the protection order with such conduct.

{¶25} Lastly, Mr. Schell points to discrepancies between D.B.'s statements to the police and his trial testimony. This is a challenge to D.B.'s credibility. "When a defendant challenges the sufficiency of the evidence, [this Court does] not evaluate credibility." *State v. Delrossi*, 9th Dist. Summit No. 26943, 2014-Ohio-4457, ¶ 8.

{¶26} Viewing the evidence in a light most favorable to the State, there is sufficient evidence for a rational trier of fact to have found the essential elements of violating a protection order proven beyond a reasonable doubt. *See Jenks,* 61 Ohio St.3d 259, at paragraph two of the syllabus. Mr. Schell's first assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE.

{¶27} In his second assignment of error, Mr. Schell argues his conviction is against the manifest weight of the evidence because the State failed to present any evidence that he violated the protection order. The State points to Mr. Schell's failure to undertake any analysis of the persuasiveness of the State's evidence and urges this Court to decline to review the weight of the evidence argument.

{¶28} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins,* 78 Ohio St.3d at 387. While the test of sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. *Id.* at 390 (Cook, J., concurring).

{¶29} When applying the manifest weight standard, appellate courts are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten,* 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 42 (1982). This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against the conviction. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *see also Otten* at 340.

{¶30} Mr. Schell argues his conviction is against the manifest weight of the evidence because D.B. "has not demonstrated any violation. He has imputed, without corroboration, that Mr. Schell 'swerved' toward him and that he said something to him. * * *, there is no evidence in support of a violation." This is the totality of Mr. Schell's manifest weight argument. As framed in this assignment of error, Mr. Schell is making two arguments: 1) there is no evidence

Mr. Schell violated the protection order, and 2) D.B.'s testimony regarding violations of the protection order is uncorroborated.

{¶31} An argument regarding lack of evidence sounds in sufficiency rather than weight. *See State v. Salmons*, 9th Dist. Summit No. 27108, 2014-Ohio-3804, ¶ 23. This Court has already determined that Mr. Schell's conviction for violation of a protection order is based upon sufficient evidence. Accordingly, Mr. Schell's argument that there is no evidence that he violated the protection order is not a manifest weight challenge and this Court declines to conduct such an analysis. *See State v. Shannon,* 9th Dist. Lorain No. 13CA010517, 2015-Ohio-438, ¶ 25, quoting *State v. Auerswald,* 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 50.

{¶32} Arguments regarding uncorroborated testimony are challenges to a witness's credibility and are properly reviewed under a manifest weight analysis. *See State v. Henderson*, 9th Dist. Summit No. 27078, 2014 Ohio-5782, ¶ 9. Mr. Schell claims there is no evidence to corroborate D.B.'s claim that Mr. Schell swerved his truck at D.B. or that he said anything to D.B. However, the lack of corroborating evidence, by itself, does not undermine D.B.'s credibility. *See State v. Moore-Bennett*, 8th Dist. Cuyahoga No. 95450, 2011-Ohio-1937, ¶ 15. Moreover, there is no statutory requirement for corroboration in a violation of a protection order charge.

{¶33} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Upon review of the record, we cannot say that the jury lost its way when it chose to believe the portions of D.B.'s

testimony that were uncorroborated. Mr. Schell has not shown that this is the exceptional case where the trier of fact lost its way in convicting him.

{¶34} Further, in his manifest weight challenge, Mr. Schell does not develop an argument that D.B.'s testimony is inconsistent or conflicts with other witness testimony or evidence. This Court will not develop such arguments on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

{¶35} Therefore, this Court concludes that Mr. Schell's conviction for violation of a protection order was not against the manifest weight of the evidence. Mr. Schell's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE JURY INSTRUCTIONS IN THIS MATTER ARE INSUFFICIENT AND CAUSED PLAIN ERROR TO THE APPELLANT'S PREJUDICE.

{¶36} In his third assignment of error, Mr. Schell argues the trial court committed plain error when it failed to instruct the jury as to "which specific acts by Mr. Schell constituted violations of specific prohibitions of the *ex parte* protection order." (Emphasis sic.) This Court disagrees.

{¶37} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is an obvious defect in the trial; and (3) that affects the appellant's substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). An error affects the appellant's substantial rights if it affected the outcome of the trial. *Id.* "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶38}** When reviewing jury instructions, the appellate court reviews the instructions as a whole. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 410 (9th Dist.1993). "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, ¶ 5, and *State v. Lessin*, 67 Ohio St.3d 487, 493 (1993).

**{¶39}** The trial transcript does not contain any discussion about the jury instructions or the actual reading of the jury instructions. Therefore, the State suggests this Court is unable to review the merits of Mr. Schell's assignments of error regarding the jury instructions and should presume regularity in the trial court's proceedings. While this is an accurate proposition of law, the record does include a copy of the jury instructions and thus this Court is able to review these assignments of error under a plain error analysis.

**{¶40}** "[T]he instructions found in the Ohio Jury Instructions are not mandatory, [but] they 'are recommended instructions based primarily upon case law and statutes[.]'" *State v. Armstrong*, 9th Dist. Summit No. 24479, 2009-Ohio-5941, ¶ 13, quoting *Buehler v. Falor*, 9th Dist. Summit No. 20673, 2002 WL 121204, *1 (Jan. 30, 2002), quoting *State v. Martens*, 90 Ohio App.3d 338, 343 (3d Dist. 1993). When a jury instruction tracks with the language of the Ohio Jury Instructions, there is no plain error. *State v. Harwell*, 2d Dist. Montgomery No. 25852, 2015-Ohio-2966, ¶ 64.

**{¶41}** Ohio Jury Instruction CR 519.27 applies to R.C. 2919.27, violation of a protection order. Based on the evidence presented at trial, the trial court gave the jury instruction provided

in Ohio Jury Instruction CR 519.27, including definitions of "[s]erved" and "recklessly." A review of the filed jury instructions reflects that the language used by the trial court substantially mirrors Ohio Jury Instruction CR 519.27 and is a correct statement of law.

{¶42} Mr. Schell does not object to any of the language given to the jury. Instead, he asserts there should have been additional instructions given regarding what type of conduct violates a protection order. He asserts the protection order contained multiple restrictions which the jury could have found him to have violated. Mr. Schell argues the additional instruction would have provided the jury with clarification and allowed unanimity in the verdict.

{¶43} Mr. Schell relies on *State v. Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 5, for the proposition that when there are multiple ways in which to commit an offense, a jury verdict lacks unanimity and plain error exists. In *Ward*, the defendant challenged the indictment on the aggravated robbery count as being duplicitous. *Id.* at ¶ 4. While Ward was convicted on one count of aggravated robbery, the evidence at trial reflected two distinct offenses (taking a purse and taking money from the cash register) presented in the single charge. *Id.* at ¶ 2, 12. Based on that scenario, the jury could find the defendant guilty of aggravated robbery, but may not be unanimous as to which set of facts resulted in the offense. *Id.* at ¶ 12. The court found plain error. *Id.* at ¶ 14.

{¶44} This case is distinguishable from *Ward* for two reasons. First, Mr. Schell is challenging the jury instructions and not the indictment. Second, this case does not involve multiple distinct crimes, but instead multiple ways in which an element of a crime may be satisfied. *Ward* at ¶ 6, citing *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 68.

{¶45} In *Gardner*, the Ohio Supreme Court addressed the issue of unanimity in relation to jury instructions. The Court "recognize[d] that the law on juror unanimity distinguishes

between the elements of a crime and the means by which a defendant commits an element." *Gardner* at ¶ 37. While "Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Id*. at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817 (1999). *Richardson* explained:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Richardson* at 817.

{¶46} In this case, the elements for violation of a protection order are 1) service of the protection order upon the defendant, and 2) recklessly violating the terms of a protection order issued pursuant to R.C. 2903.214. The jury unanimously found the element of recklessly violating the terms of a protection order. The means by which Mr. Schell recklessly violated the terms of the protection order (i.e., taking pictures of D.B. while standing on his property, yelling and swerving at D.B. while driving on a public road, or circling back to pass D.B. a second time) do not require jury unanimity.

{¶47} The record and the law contradict Mr. Schell's asserted error. Based upon the evidence presented at trial, the court instructed the jury as to the relevant and necessary elements of the crime of violation of a protection order: "that the defendant was previously served with a copy of a protection order regarding [D.B.], and that on or about August 27, 2014, and in Summit County, Ohio, [Mr. Schell] recklessly violated the terms of that protection order." These jury instructions followed Ohio Jury Instruction CR 519.27. No additional instruction was necessary regarding the means by which a defendant violates a protection order in order to have

an unanimous verdict. Based on the foregoing reasons, Mr. Schell has failed to establish plain error. Mr. Schell's third assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT REQUIRING THE JURY TO DETERMINE THAT THE *EX PARTE* PROTECTION ORDER WAS A VALID PROTECTION ORDER.

**{¶48}** In his fourth assignment of error, Mr. Schell argues the trial court committed plain error when it failed to instruct the jury to determine whether the ex parte temporary protection order existed and was valid. This Court disagrees.

**{¶49}** Mr. Schell states that "[t]hroughout the trial, Mr. Schell called into question the validity of the *ex parte* protection order regarding [D.B.]" (Emphasis sic.) Mr. Schell presented evidence that the full hearing had not yet occurred due to various motions to continue filed by Mr. Schell and the victims. Based on this testimony, Mr. Schell asserts an additional jury instruction was necessary as to whether the ex parte protection order existed and was valid.

**{¶50}** Following the issuance of a protection order from an ex parte hearing, the trial court shall schedule a full hearing within ten days of the ex parte hearing. R.C. 2903.214(D)(2)(a). However, the trial court may grant a continuance of the full hearing to a reasonable time when the parties consent to the continuance or the continuance is needed for other good cause. R.C. 2903.214(D)(2)(a)(ii) and (iv). In this case, both Mr. Schell's attorney and the attorney for D.B. and J.B. testified that the full hearing was continued based upon three motions by Mr. Schell for the purpose of discovery and upon agreement of counsel and the trial court to stay the full hearing until the disposition of this case.

**{¶51}** Additionally, courts have held that a violation of a protection order can arise from an ex parte protection order where the full hearing has not yet been held. *See State v. Hall*, 5th

Dist. Delaware Nos. 12CAA030017, 12CAA030018, 12CAA030019, 2013-Ohio-660, ¶ 24, 30; *see also State v. Sutts*, 12th Dist. Warren No. CA2003-07-074, 2004-Ohio-3541, ¶ 2-3, 7. The lack of a full hearing does not render an ex parte protection order invalid. *See Sutts* at ¶ 7, 10. This is because "[a]n order of the court must be obeyed unless and until a court finds it is invalid or rescinds it." *Id*. at ¶ 9, citing *Reynoldsburg v. Eichenberger*, 5th Dist. Licking No. CA-3492, 1990 WL 52467, *4 (Apr. 18, 1990), citing *In re White*, 60 Ohio App.2d 62, 65 (5th Dist.1978), citing *United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947).

{¶52} There was testimony from D.B., Captain Ray, and attorney Ronald Schafer[1] that an ex parte protection order was issued on April 10, 2014 for the benefit of D.B. and J.B. Additionally, a time-stamped copy of the Order of Protection was admitted into evidence. The Order states the terms therein are in effect until April 9, 2017.

{¶53} The trial court's jury instructions, modeled after Ohio Jury Instruction CR 519.27, stated "[b]efore you can find the defendant guilty, you must find beyond a reasonable doubt, that the defendant was previously served with a copy of a protection order regarding [D.B.], and that on or about August 27, 2014, and in Summit County, Ohio, recklessly violated the terms of that protection order." It is implicit in the language of the instruction that the jury find the existence of a valid protection order in order to find a defendant guilty of violating a protection order. Thus, no further instruction was necessary.

{¶54} Based on the testimony at trial and the applicable law, the trial court "present[ed] a correct, pertinent statement of the law that is appropriate to the facts." *See White*, 142 Ohio St.3d 277, 2015-Ohio-492, at ¶ 46, citing *Griffin*, 2014-Ohio-4767, at ¶ 5, and *Lessin*, 67 Ohio

---

[1] Attorney Ronald Schafer is not related to panel member, Judge Schafer.

St.3d at 493. Based on the lack of error, the starting point for a plain-error inquiry, Mr. Schell's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 5

THE APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER IS ERROR AS IT IS BASED UPON AN *EX PARTE* TEMPORARY ORDER WHERE NO BASIS EXISTED FOR THE ISSUANCE OF A PROTECTION ORDER FOLLOWING THE FULL HEARING.

{¶55} In his fifth assignment of error, Mr. Schell asserts his conviction for violating a protection order is error. During oral argument, Mr. Schell withdrew this assignment of error. Consequently, this Court will not review it.

III.

{¶56} Mr. Schell's first, second, third, and fourth assignments of error are overruled and Mr. Schell's fifth assignment of error is not considered as it was withdrawn. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.