[Cite as *State v. Abdugheneima*, 2017-Ohio-8423.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                    Court of Appeals No. L-17-1013

      Appellee                              Trial Court No. CRB-16-11725

v.

Hamdan M. Abdugheneima                    **DECISION AND JUDGMENT**

      Appellant                             Decided:  November 3, 2017

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Hamdan M. Abdugheneima, appeals the February 9,

2017 judgment of the Toledo Municipal Court convicting him of two counts of violating

an order of protection.  For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} On August 8, 2016, Hamdan Abdugheneima was served with an order of protection prohibiting him from contacting or coming within 500 feet of K.D., who was then his live-in girlfriend.[1] Abdugheneima was charged under R.C. 2919.27(A)(1) with violating that order by sending text messages to K.D. on August 17, 2016, and August 21, 2016.

{¶ 3} The case was tried to the court on December 5, 2016. According to the evidence presented by the state, Toledo police were called to the YWCA on August 17, 2016. There they met with K.D., who reported that she had received threatening text messages from Abdugheneima. K.D. showed her phone to the officers, and they saw a message that she had received that day that stated "Go to police you think scare me if I see you I will show you I will kill you or I will put you in jail and your kids are not from me you have your kids from street God will punish your face [sic][.]" There were additional messages on K.D.'s phone, some of which the officers could not understand because they were not written in English.

{¶ 4} Officers verified that a protection order existed between the parties and that Abdugheneima had been served with the order. The detective assigned to the case determined that the number from which the messages were received belonged to Abdugheneima. He was charged with violating the protection order by sending the

---

[1] Some testimony was presented indicating that Abdugheneima and the victim were married in a religious ceremony, but not legally married. K.D. testified that she is pregnant with twins fathered by Abdugheneima.

2.

August 17, 2016 text message, and he was charged with an additional count premised on another message K.D. received on August 21, 2016.

{¶ 5} At trial, Abdugheneima testified and denied contacting K.D. He contended that there is an "app" available that enables a person to contact someone from one phone number but make it look like it came from another phone number—what he described as a fake caller ID. He claimed that his former wife had used this technology in the past to make it look as though he was being contacted by children's services when in fact it was she who was calling. Abdugheneima suggested that the victim, perhaps along with his ex-wife, had used this technology to frame him.

{¶ 6} The court rejected Abdugheneima's explanation and found him guilty. It ordered a presentence investigation report and continued the matter for sentencing on December 12, 2016. At that time, Abdugheneima requested an Arabic interpreter. The court granted his request and the matter was again continued for sentencing on December 19, 2016. The court imposed a term of imprisonment of 180 days, 90 days of which were suspended and the other 90 days to be served on GPS supervision. It also sentenced Abdugheneima to anger management classes and one year of active probation, imposed court costs, and issued an order of no contact with the victim with certain exclusion zones defined.

{¶ 7} Abdugheneima appealed and assigns the following errors for our review:

I. The trial court erred to the prejudice of appellant by not appointing a foreign language interpreter as required by the Ohio Rules of Superintendence (Sup.R. 88) and the Ohio Revised Code (R.C. 2311.14)

3.

for the trial in this matter, when an interpreter was provided for the sentencing hearing.

II. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Constitution of the State of Ohio.

III. Appellant's testimony without an interpreter was not sufficient to support a conviction, or in the alternative, his conviction was against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 8} K.D. and Abdugheneima speak Arabic as their primary language, however, they both testified in English. In his first assignment of error, Abdugheneima argues that he had difficulty communicating in English and it was, therefore, incumbent on the court to appoint a translator for him at trial as it did at sentencing. In his second assignment of error, he claims that trial counsel was ineffective for failing to request the appointment of a translator at trial. And in his third assignment of error, he contends that his language barrier produced a verdict that was either not supported by sufficient evidence or was against the manifest weight of the evidence.

### A. Failure of the Trial Court to Appoint an Interpreter

{¶ 9} Abdugheneima claims that the trial court abused its discretion in failing to appoint an Arabic translator at trial. He insists that this is demonstrated by the fact that (1) there were 35 instances in the record where words in his responses were noted by the

4.

court reporter to be "unintelligible"; (2) his answers to questions were sometimes non-responsive; (3) the transcript reveals that he was sometimes confused by questions asked of him; and (4) the trial court appointed a translator at sentencing.

{¶ 10} Under R.C. 2311.14(A)(1), "[w]henever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person."

{¶ 11} In addition to this statute, Sup.R. 88(A) provides:

A court shall appoint a foreign language interpreter in a case or court function in either of the following situations:

(1) A party or witness who is limited English proficient or non-English speaking requests a foreign language interpreter and the court determines the services of the interpreter are necessary for the meaningful participation of the party or witness;

(2) Absent a request from a party or witness for a foreign language interpreter, the court concludes the party or witness is limited English proficient or non-English speaking and determines the services of the interpreter are necessary for the meaningful participation of the party or witness.

{¶ 12} "[W]hether a party or witness is entitled to an interpreter is initially based on the trial court's assessment of their apparent ability to comprehend and communicate in English." *State v. Luna-Corona v. Esquivel-Parrales*, 12th Dist. Butler No. CA2008-07-175, 2009-Ohio-2628, ¶ 10, citing *State v. Castro*, 2d Dist. Montgomery No. 14398,

5.

1995 Ohio App. LEXIS 4105 (Sept. 20, 1995). The decision is within the trial court's discretion, and the failure to appoint a translator is reviewed under an abuse-of-discretion standard. *State v. Razo*, 157 Ohio App.3d 578, 2004-Ohio-3405, 812 N.E.2d 1005, ¶ 4 (9th Dist.).

{¶ 13} We have carefully reviewed the trial transcript. While there are a number of instances where portions of Abdugheneima's responses were recorded as "unintelligible" at the time of transcription, there is no indication that the court or the parties did not understand Abdugheneima when listening to him in real time. In fact, objections interjected during his testimony indicate that counsel and the court were able to understand him. We address the very few instances where there was any reference to any purported language barrier.

{¶ 14} The first instance was during Abdugheneima's direct examination. His attorney asked if he knew of the existence of the protection order. Abdugheneima initially said no, and his attorney, realizing that Abdugheneima misunderstood, commented to the court: "And, Your Honor, I know you know that there is some language difficulties that—." Through follow-up questioning, it was quickly clarified that Abdugheneima received the documents relating to the order of protection, but they were provided to him in court and not delivered to his home. He confirmed that he understood that he was not to contact K.D.

{¶ 15} A second instance occurred when Abdugheneima was explaining his "fake caller ID" theory. He testified that there is an app that enables one to place a call or

6.

message from one number but make it look like it came from another number.[2]  At first Abdugheneima said that he has the app on his phone, but he then clarified that he does not have the actual app—only a picture of the app.  The state seized on his original statement, which prompted Abdugheneima to offer to show the prosecutor his phone to prove that he does not have it.  Before allowing him to do so, the prosecutor told the court that because he "indicated he has some language issues," she wanted to ensure that he understood that by offering the phone to show that he does not have the app, it would become part of the evidence in the case and he would not be able to take it home.  There was no indication that Abdugheneima did not understand this, and after asking to consult with his attorney, he remained willing to offer his phone into evidence.

{¶ 16} The third instance occurred when the state viewed Abdugheneima's phone. While Abdugheneima indicated that he had a "picture" of the app on his phone, the state observed that what was contained on his phone appeared to be a video explaining how to use fake caller ID.[3]  Realizing this, the state asked Abdugheneima:  "So you don't necessarily need an app, you can just do it on your phone without an app?"

---

[2] At trial, the court admitted as an exhibit K.D.'s phone records, obtained by the state from AT&T, which showed calls originating from Abdugheneima's number.  Also admitted were phone records that Abdugheneima obtained from AT&T which did *not* show calls made to K.D.'s number.  The state's position was that Abdugheneima's use of the fake caller ID app allowed him to route calls through another number.  That number appears in both sets of records.

[3] It is not clear whether the actual video appeared on his phone or whether it was just a still shot of the video.  The lack of clarity is not due to any language difficulties—it is due to the failure of the state and the witness to make a clear record of what they were looking at when the state was examining the phone.  Whether it was the video or a photo of the video does not impact our decision.

7.

Abdugheneima backtracked at this point, claiming, "My English is bad. I can't do it. I can't understand English. I don't know." The state pressed on and asked if he had watched the video on how to place a call with fake caller ID. Abdugheneima maintained that he just showed his lawyer the text and the picture, claimed that he could not understand everything in the video because "I speak English but it's not like a hundred percent," and denied that he knows how to use fake caller ID. He described that he performed a google search to get the information, but insisted that he did not know whether or not an app was necessary.

{¶ 17} The final instance occurred when Abdugheneima claimed that he did not have a criminal record in the United States. After the court rendered its verdict, Abdugheneima acknowledged that charges had been filed against him in the past, but he denied having any convictions. The court confronted Abdugheneima with information to the contrary, which included a conviction resulting from a plea. Abdugheneima then suggested that he must have misunderstood his lawyer: "Maybe my English can't understand what he say is why." The trial court did not believe Abdugheneima's explanation. The court told Abdugheneima "your English has nothing to do with it."

{¶ 18} Ohio courts do not require the appointment of an interpreter where the defendant is able to effectively understand or communicate in the English language. *Castro*, 2d Dist. Montgomery No. 14398, 1995 Ohio App. LEXIS 4105, at *11. Courts recognize that "[a]n imperfect grasp of the English language may be sufficient as long as the defendant has the ability to understand and communicate in English." *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶ 17. A trial court properly exercises

8.

its discretion in refusing to appoint an interpreter where the defendant has a "functional mastery of the English language" and where misunderstandings during testimony may be remedied by a "simple rephrasing of the question." *State v. Saah*, 67 Ohio App.3d 86, 95, 585 N.E.2d 999 (8th Dist.1990). Consistent with these principles, we concluded in *State v. Kunz,* 6th Dist. Wood No. WD-10-047, 2011-Ohio-3115, ¶ 21, that an interpreter was not required simply because a witness "struggled with some words" or spoke "imperfect grammar."

{¶ 19} In *State v. Marquez*, 11th Dist. Ashtabula No. 2007-A-0085, 2008-Ohio-5324, ¶ 35-36, the court found no error in the failure to appoint an interpreter for a witness even though the witness possessed only a seventh grade education, did not know how to read or write in English, and expressed reservations about his ability to fully understand English. The court found that the witness's answers at trial were responsive and "exhibited an appreciation of the essence of the questions which were posed." *Id.* at ¶ 36.

{¶ 20} In *State v. Mendoza*, 11th Dist. Ashtabula No. 89-A-1425, 1989 Ohio App. LEXIS 4378, *6-7 (Nov. 24, 1989), the court found that an interpreter was not necessary where "for the most part," the witness's answers were responsive to the questions. The court observed that all the times when there was difficulty understanding the witness, it was because he was talking too quickly in English. The court also concluded that "[a]ll confusion seemed to center on appellant's desire to either evade the question or to supplement his answers with unresponsive matter for which he would then be reprimanded by the trial court." *Id.*

9.

{¶ 21} Here, Abdugheneima testified that he has been in Toledo for 17 years and runs his own business. His answers were responsive to questions and he exhibited an understanding of what was being asked of him. The only time he claimed not to fully understand English was when he was pressed about inconsistencies in his testimony. The trial court stated: "Your English has nothing to do with it." In the trial court's estimation, Abdugheneima exhibited dishonesty—not a lack of understanding of the language. We conclude that Abdugheneima's ability to communicate in English was sufficient to allow him to meaningfully participate at trial, such that appointment of a translator was not required.

{¶ 22} We also reject Abdugheneima's contention that because the trial court granted his request for a translator at sentencing, it was incumbent on it to do so for trial. *See G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, at ¶ 25-26 (rejecting appellant's argument that approval of reimbursement of interpreter fees for sentencing hearing, was implicit acknowledgment that interpreter was mandatory for plea hearing).

{¶ 23} We find that the trial court did not err in failing to appoint a translator for Abdugheneima. We, therefore, find his first assignment of error not well-taken.

### B. Ineffective Assistance of Counsel

{¶ 24} In his second assignment of error, Abdugheneima argues that trial counsel was ineffective in failing to request the appointment of an interpreter. To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's

10.

errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 25} Because we conclude that Abdugheneima demonstrated an ability to effectively understand and communicate in the English language and was able to meaningfully participate at trial, we find that counsel was not deficient in failing to seek an interpreter, and we find no reasonable probability that the outcome of the proceedings would have been different had an interpreter been appointed.

{¶ 26} We, therefore, find Abdugheneima's second assignment of error not well-taken.

### C. Sufficiency and Manifest Weight of the Evidence

{¶ 27} In his third assignment of error, Abdugheneima claims that his conviction was not supported by sufficient evidence or, alternatively, that the verdict was against the manifest weight of the evidence. He argues that he misspoke about whether he had the fake caller ID app because of his difficulties in communicating in English, and that his confusion was exploited by the state.

{¶ 28} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could

11.

have found the essential elements of the crime proven beyond a reasonable doubt."
(Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668
(1997). In making that determination, the appellate court will not weigh the evidence or
assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378
N.E.2d 1049 (1978).

{¶ 29} When reviewing a claim that a verdict is against the manifest weight of the
evidence, the appellate court must weigh the evidence and all reasonable inferences,
consider the credibility of witnesses, and determine whether the finder of fact clearly lost
its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of
justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.
We do not view the evidence in a light most favorable to the state. "Instead, we sit as a
'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'"
*State v. Robinson,* 6th Dist. Lucas No. L–10–1369, 2012–Ohio–6068, ¶ 15, citing
*Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional
case in which the evidence weighs heavily against the conviction." *Thompkins* at 387,
quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 30} To prove a violation of R.C. 2919.27(A)(1), the state was required to show
that Abdugheneima was served with the order of protection and that he recklessly
violated its terms. *State v. Schell*, 9th Dist. Summit No. 28255, 2017-Ohio-2641, ¶ 46;
*City of Toledo v. Lyphout*, 6th Dist. Lucas No. L-08-1406, 2009-Ohio-4956, ¶ 18-26.
Abdugheneima admitted that he signed the order and knew he was not to contact K.D., so
there was evidence presented as to the first element of the offense. As for the second

12.

element, while Abdugheneima denied contacting K.D., K.D. testified that he sent her threatening text messages, and officers testified that they examined her phone and confirmed that the messages came from a number belonging to Abdugheneima. The state, therefore, presented evidence from which a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Abdugheneima's challenge to the sufficiency of the evidence fails.

{¶ 31} As for his challenge to the manifest weight of the evidence, Abdugheneima first stated that he had the fake caller ID app on his phone, clarified that it was actually just a picture of the app, then, after physically showing his phone to the state, was forced to concede that it was an instructional video showing how to use the app. He explained how he searched for the information on www.google.com, and he understood and was able to describe the difference between an app, a picture, and a video. Ultimately, the court's decision did not come down to an inability to understand Abdugheneima or Abdugheneima's inability to effectively communicate—it came down to Abdugheneima's credibility. Simply put, the court did not believe his testimony.

{¶ 32} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the fact-finder's credibility determinations given that it is the fact-finder who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

13.

{¶ 33} Here, the court saw Abdugheneima testify, observed his facial expressions and body language, listened to the inflection in his voice, and determined his testimony to be not credible.  We decline to second-guess the trial court's conclusion in this regard.

{¶ 34} Accordingly, we find Abdugheneima's third assignment of error not well-taken.

### III.  Conclusion

{¶ 35} Abdugheneima demonstrated an ability to readily understand and communicate in the English language and the record shows that his mastery of English permitted him to meaningfully participate at trial.  The trial court did not err in failing to appoint a translator for him, and counsel was not ineffective for failing to request one.  There was sufficient evidence to support his conviction, and the conviction was not against the manifest weight of the evidence.  The conviction resulted not because a language barrier prevented him from effectively communicating, but because the court found Abdugheneima's testimony not credible.

{¶ 36} We find Abdugheneima's three assignments of error not well-taken, and we affirm the February 9, 2017 judgment of the Toledo Municipal Court convicting Abdugheneima of violating an order of protection.  The costs of this appeal are assessed against Abdugheneima under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                           _____
                                                            JUDGE
James D. Jensen, J.

                                               _____
Christine E. Mayle, J.                                      JUDGE
CONCUR.

                                               _____
                                                            JUDGE